THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* WILLIAM B. MARTIN *et al.*, Defendants-Appellants.

(No. 12298;

Fourth District—May 27, 1974.

Duane L. Traynor, of Traynor & Hendricks, of Springfield, for appellants.

C. Joseph Cavanagh, State's Attorney, of Springfield, for the People.

Mr. JUSTICE SIMKINS delivered the opinion of the court:

Defendants appeal from judgments and sentences entered on guilty pleas to the offense of bribery in violation of section 33—1 of the Criminal Code (Ill. Rev. Stat. 1971, ch. 38, par. 33—1). Defendant Martin was given a 1-year sentence with a $4500 fine and defendant Meurlott was given a 1- to 3-year sentence with a $5000 fine. On appeal defendants raise the following issues: (1) Whether the State violated the spirit of the plea bargaining agreement; (2) Whether the trial court abused its discretion by denying defendants probation; (3) Whether the trial court abused its discretion by imposing a more severe sentence on defendant Meurlott.

The basic facts are not in dispute. On October 26 and October 31, 1972, defendant Meurlott contacted a Mrs. Murray, an employee of the computer-data section of the Secretary of State's Office in Springfield, Illinois, and offered her $10,000 for the names of all 16-, 17- and 18-year-old drivers in the State of Illinois from the Secretary of State's driver's license file. On November 1, 1972, Mrs. Murray received a call from Meurlott and Martin indicating that only the names of 16- and 17-year-old drivers were desired and advised her as to certain technical matters. On November 3, 1972, Meurlott called Mrs. Murray to discuss other technical matters and the necessity for an advance payment. On November 6, 1972, Mrs. Murray met defendants at a motel room in Springfield and received from defendants $5000 and two reels of the magnetic tape

needed to run off the names. Mrs. Murray, however, had been in contact with the authorities, and defendants were immediately arrested by investigators from the Secretary of State's Office and the State police.

On November 15, 1972, the defendants were indicted for bribery, two counts of solicitation, attempted theft over $150, and conspiracy. On January 11, 1973, defendants entered into a plea bargaining agreement with the State whereby they would plead guilty to the bribery count, and the State would dismiss the other four counts of the indictment. The agreement further provided that Meurlott would be fined $5000, and defendant Martin would be fined $4500. Under the agreement the question of sentencing was to be left to the court with only a maximum possible term of 1 year as to Martin stipulated. The court then informed defendants that the State was not precluded from introducing evidence at the hearing in aggravation and mitigation concerning the occurrence and the backgrounds of defendants but under the terms of the agreement could make no recommendation as to sentence imposition. The court further stated that since no recommendation would be made, the court wanted to be fully informed as to everything concerning the offense, and the State could put on witnesses in that regard. The defendants stated they understood, defense counsel agreed, and the court subsequently entered judgment on the pleas.

On March 1, 1973, a hearing was held in aggravation and mitigation. Extensive reports by the probation officer indicated that both defendants were in their mid-thirties, had no prior criminal records, had been engaged in various business ventures, and it concluded that defendants could be favorably recommended for probation. The State with the court's permission then extensively questioned defendants in regard to their motivation in committing the offense, the details of the offense, the financial arrangements involved, and the backgrounds of both defendants. Meurlott later stated that it was his idea to contact Mrs. Murray, but he could not say whose idea it was to bribe a State official. Martin stated that he and Meurlott mutually agreed to the bribery attempt. The State then related to the court the sentencing alternatives, but did not make any recommendation in that regard. The court then stated its concern over the seriousness of the offense committed, and the fact that not to impose some type of incarceration would be an encouragement to others to bribe public officials. On March 5, 1973, the court stated that probation would not be granted because of the crime involved, and the number of steps taken to perpetrate it showed much deliberate thought and actions on the part of defendants, combined with the fact that the lists could have legitimately been acquired at a greater expense. The

court then sentenced defendants again stating its concern over the seriousness of the offense, and the fact that incarceration was necessary so as not to encourage this type of conduct.

■■■ On appeal the defendants do not argue that the State violated the letter of the plea agreement, but simply contend that the State violated the "spirit" of the agreement by so vigorously questioning defendants as to motivation and other matters pertinent to the offense. We find that neither the letter of plea agreement nor its spirit, assuming there is such an elusive creature lurking in the background, were violated in the present case. Indeed, the State agreed to leave sentence imposition to the discretion of the court and that was exactly what was done, for at no time did the State ever recommend a sentence or anything else in violation of the agreement. We note that defendants were aggressively and extensively questioned by the State at the hearing on aggravation and mitigation, and such questioning could have placed defendants in an unfavorable light before the court. Nevertheless, the trial judge informed defendants before accepting the plea that such questioning on the part of the State was not precluded, and the trial judge certainly has the right to know everything relevant to the case and to the defendants involved in imposing sentence. At the hearing the State stated that it would like to question defendants in regard to their motivation in committing the offense. The trial court replied affirmatively, and the questioning of defendants commenced. At one point defense counsel objected to the intensity of the questioning and the court replied, "I think the court has the right to know everything about the crime that there is to know in order to come to a just sentence in this case." Indeed, the State's Attorney, as an officer of the court, certainly has an obligation to convey this information to the court as long as no specific terms of the plea agreement are violated.

The defendants also contend that the trial court abused its discretion in denying probation to the defendants. We do not agree. The question of probation is within the sound discretion of the trial court (*People v. Wease*, 44 Ill.2d 453, 255 N.E.2d 426), and one has neither an inherent nor a statutory right to probation. (*People v. Sessions*, 132 Ill.App.2d 447, 270 N.E.2d 40.) The trial court in the instant case conducted an extensive hearing in aggravation and mitigation, had before it extensive presentencing reports, and delayed its decision for 3 days to further contemplate the matter. Even though denial of probation was not based on defendants' prior record, nor on the necessity to protect society, nor on defendants' need for incarceration for rehabilitative purposes, all these relevant factors mandated by statute were considered by the court, but the court obviously considered another relevant factor, the serious-

ness of the offense and the possible corrupting influence on other public employees, to be decisive. Therefore, on the record before us we cannot say that the trial court manifestly abused its discretion in denying probation.

■■ Defendant Meurlott contends that the trial court abused its discretion by discriminating against him in the imposition of sentences since he received 1 to 3 years while defendant Martin received only a 1-year sentence. We see no merit to this argument. It is not necessarily contemplated that the same sentence will be imposed on all persons guilty of the same offense. (*People v. Sockwell,* 7 Ill.App.3d 520, 288 N.E.2d 33.) A defendant clearly cannot complain that he received a discriminatory sentence compared with his co-defendant where the sentence was within statutory limits, and the trial court could have considered other relevant factors in regard to this defendant's conduct. (*People v. Spears,* 50 Ill.2d 14, 276 N.E.2d 322.) In the present case the sentence imposed on Meurlott was within statutory limits, and the trial court obviously considered other relevant factors in regard to Meurlott's conduct. For instance, Meurlott admitted that it was his idea to contact Mrs. Murray and that he made the initial contact. Therefore, we find no manifest abuse of the trial court's discretion in imposing disparate sentences on the two defendants.

Accordingly, for the reasons stated herein the judgments of the trial court are hereby affirmed.

Judgments affirmed.

SMITH, P. J., and TRAPP, J., concur.