[No. 38145. En Banc. April 7, 1966.]

*In the Matter of the Application for a Writ of Habeas Corpus of* JACK M. LITTLE, *Petitioner*, v. B. J. RHAY, *as Superintendent of the State Penitentiary, Respondent.**

*Reported in 413 P.2d 15.

*Francis Conklin,* for petitioner.

*The Attorney General* and *Lee D. Rickabaugh, Assistant,* for respondent.

*Edmund J. Wood* and *Michael H. Rosen,* amici curiae.

HUNTER, J.—This is an application for a writ of habeas corpus by Jack M. Little, an inmate of the Washington State Penitentiary at Walla Walla. Petitioner was convicted in a trial by jury in January, 1960, of the crime of aiding and abetting the unlawful possession of narcotics. Petitioner's codefendant at the trial, James Bitrick, was convicted of the substantive offense and appealed from his conviction. Petitioner, whose sentence was suspended, chose not to appeal from his conviction. Bitrick died while his appeal was pending, and that appeal was dismissed (Supreme Court Cause No. 35536). On July 22, 1963, the suspension of petitioner's sentence was revoked for parole violations, and petitioner was committed to the state penitentiary. Petitioner now prosecutes this application, alleging that certain features of his arrest and conviction violated his rights under the state and federal constitutions.

Petitioner's arrest and the circumstances surrounding it occurred as follows. On the evening of August 28, 1959, Detectives Sprinkle and Waitt, experienced members of the Seattle police department narcotics detail, were parked in a parking lot at First and Pine in Seattle. During the two previous evenings, these two officers had kept petitioner under surveillance because of his reputation as a known user of narcotics and because of information from anonymous informers to the effect that petitioner was picking up heroin in the Jackson Street area of Seattle.

On this evening, petitioner was not under active surveillance until the officers observed his automobile with two occupants proceeding north on First Avenue in a direction away from the Jackson Street area. Recognizing the automobile, and petitioner as its passenger, the officers followed the car to petitioner's residence, an apartment on Vine Street. The officers knew which apartment was petitioner's residence, but neither officer knew the identity of the driver of petitioner's car.

When the two men got out of the car and walked through the courtyard into the apartment house, Detective Sprinkle followed them. He later testified that both men appeared to be a little unsteady on their feet. The officer noticed a man's legs going up the inner stairway of the apartment house and, assuming both men had gone up to the apartment, he climbed the few steps onto the common porch of the apartment house. As Detective Sprinkle approached the glass doorway, petitioner came out of the doorway and collided with the officer. Again according to the officer's testimony, petitioner at this point "could barely stand on his feet," and had to be helped down the stairs. When asked about his condition, petitioner said he was "loaded on goofers," and stuck out his tongue, displaying a yellow capsule on it, which the officer recognized as a nembutal, a barbiturate.

Detective Sprinkle thereupon arrested petitioner and placed him under the custody of Detective Waitt, who was on the sidewalk. Sprinkle then returned to the apartment house and went up the stairs to petitioner's apartment. The

door to the apartment was "wide ajar," according to the officer, and when he looked through it, he noticed Bitrick, the man who had accompanied petitioner to the apartment, placing something on a small shelf. The officer entered the apartment, identified himself as a police officer, and walked to the shelf, where he found two capsules containing heroin. He then placed Bitrick under arrest. For about 3 minutes, Sprinkle remained in the apartment with Bitrick. He then took Bitrick outside to where Waitt was holding petitioner, whereupon all four persons returned to the apartment. On this second visit to the apartment, the search was continued and another heroin capsule was found lying on the floor of the apartment beside a small table near the entrance. The officers had no warrant for arrest or search.

At the trial of petitioner and Bitrick, timely objection was made to the introduction of the three heroin capsules, on the ground that they were the product of an illegal search, but the trial court admitted them into evidence.

Petitioner raises six arguments upon this application for writ of habeas corpus. We will consider them in the order raised. Petitioner contends that his arrest was illegal, since the arresting officer did not have probable cause to suspect the commission of a felony and the officer admitted petitioner was not creating a breach of the peace in his presence. We disagree. We find that the arresting officer had probable cause to suspect that a felony was being or was about to be committed by the petitioner at the time of the arrest.

The test of probable cause for arrest without warrant was set forth in the recent case of *State v. Darst*, 65 Wn.2d 808, 812, 399 P.2d 618 (1965):

> The probable cause essential to support an arrest without a warrant is a belief based upon facts within the knowledge of the arresting officer, persuasive enough to convince a judge that a cautious but disinterested man would also believe the arrested person guilty. *State v. Smith*, 56 Wn. (2d) 368, 353 P. (2d) 155; *Henry v. United States*, 361 U.S. 98, 4 L. Ed. (2d) 134, 80 S. Ct. 168; *Carroll v. United States*, 267 U.S. 132, 69 L. Ed. 543, 45 S. Ct. 280, 39 A.L.R. 790.

Reviewing the facts and circumstances within the knowledge of the arresting officer at the time of the arrest, we see the following cumulation of factors leading to the result of probable cause: (1) The arresting officer and his partner were both veterans of over 10 years' experience on the narcotics detail; (2) both officers had known for 4 or 5 years that petitioner was a user of narcotics; (3) these officers had kept petitioner under surveillance the prior two evenings due to information furnished by informers that petitioner was picking up heroin in the Jackson Street area in Seattle; (4) shortly before the arrest, the officers noticed petitioner's automobile being driven in a direction away from the Jackson Street area, with petitioner in it; (5) the officers followed the automobile to petitioner's apartment, with which they were familiar; (6) the actions of petitioner at the time of the arrest were suspicious—he was staggering and exhibited a yellow capsule on his tongue, saying "I am loaded on goofers, this time." The cumulative effect of these factors was sufficient to furnish reasonable grounds for the officers' belief that a narcotics violation was being or was about to be committed.

A key element of these factors combining to make up probable cause is the information furnished by informers. While these were unnamed informers whose prior reliability has not been established, we noted in *State v. McClung*, 66 Wn.2d 654, 659, 660, 404 P.2d 460 (1965), that such anonymous information may properly furnish the basis for probable cause when, as in the present case, it is "supported by other facts then known to the officer or subsequently learned by investigation, . . ."

Petitioner next contends that the search of his apartment, and the seizure of the heroin capsules therein, constituted an unreasonable search and seizure in violation of his rights under the fourth and fourteenth amendments to the federal constitution, and that submission of these capsules into evidence violated the exclusionary rule announced in *State v. Gibbons*, 118 Wash. 171, 203 Pac. 390 (1922).

Since the challenged search was executed without the benefit of a search warrant, the validity of the search

can only be upheld if it was incidental to a valid arrest. *State v. Biloche,* 66 Wn.2d 325, 402 P.2d 491 (1965). Having already determined that the arrest was valid, we turn to a consideration of petitioner's argument that the search was not incidental to the arrest.

Petitioner argues that no case may be cited in support of the contention that the arrest of a suspect on the common porch of an apartment house justifies a search without a warrant of a second floor apartment. Petitioner cites *Agnello v. United States,* 269 U.S. 20, 70 L. Ed. 145, 46 Sup. Ct. 4, 51 A.L.R. 409 (1925), which he contends strongly implies a constitutional prohibition against the type of search conducted in the present case.

The *Agnello* case must be viewed in the context of its facts. The illegal search in that case was conducted in a house several blocks distant from the scene of the arrest while the defendants were in custody elsewhere. Viewed with these facts in mind, the language of the *Agnello* opinion would appear to sustain the search made in the instant case:

> The right without a search warrant *contemporaneously* to search persons lawfully arrested while committing crime *and to search the place where the arrest is made* in order to find and seize things connected with the crime as its fruits or as the means by which it was committed, as well as weapons and other things to effect an escape from custody, is not to be doubted. See *Carroll v. United States,* 267 U.S. 132, 158; *Weeks v. United States,* 232 U.S. 383, 392. . . . Such searches and seizures naturally and usually appertain to and attend such arrests. But the right does not extend to *other places.* (Italics ours.) *Agnello v. United States, supra,* p. 30.

See, also, *United States v. Rabinowitz,* 339 U.S. 56, 94 L. Ed. 653 Sup. Ct. 430 (1950).

■ The search here objected to was conducted substantially contemporaneously to the lawful arrest of petitioner and in a place sufficiently close to petitioner as to constitute a search where the arrest was made. And it must also be remembered that the man who had accompanied petitioner to the apartment house had been seen by the

officer to go upstairs, presumably to petitioner's apartment. It was incumbent upon the officer to search the apartment immediately to prevent destruction or removal of the fruits of the suspected crime.

Petitioner contends the search during which the third heroin capsule was found was a second or repetitive search and therefore constitutionally impermissible, primarily relying on the case of *In re McNear v. Rhay*, 65 Wn.2d 530, 398 P.2d 732 (1965). The *McNear* case is not apposite. In that case, the second search was conducted by officers from another detail who were searching for evidence not connected with the arrest or the permission to search given by the defendant. It was not contended, in the *McNear* case, nor could it be, that the second search constituted a continuing search. The facts of the instant case do not permit characterizing the challenged search as a "second" search. Here there was no appreciable interval between the "two" searches. Officer Sprinkle merely walked outside, with Bitrick in his custody, found his fellow officer, and returned to continue the search. We cannot hold that an officer who momentarily leaves an apartment has ended his search incidental to a lawful arrest. We therefore hold that the heroin capsules were lawfully seized during the course of a legitimate search incidental to a valid arrest. The capsules were thus properly introduced into evidence.

Petitioner's next contention is without merit. The constitutionality of section (14) of RCW 69.33.220 is challenged on the basis that it delegates to an administrative body authority to declare the conditions of a crime. Section (14) states:

> "Narcotic drugs" means coca leaves, opium, cannabis and every other substance neither chemically nor physically distinguishable from them; any other drugs to which the federal laws relating to narcotic drugs may now apply; and any drug found by the board of pharmacy, after reasonable notice and opportunity for hearing, to have addiction-forming or addiction-sustaining liability similar to morphine or cocaine, from the date of publication of such finding by the state board of pharmacy.

■ We will not consider this contention, since petitioner has no standing to urge the unconstitutionality of this law. Petitioner was convicted under section (12) of RCW 69.33-.220, which specifically designates possession of heroin as being within the purview of the statute. The allegedly defective portion of the statute had no effect upon petitioner's conviction.

When the state answered the contentions raised by petitioner in his application for a writ of habeas corpus, it included an affidavit of the two detectives who arrested petitioner and searched his apartment. Some of the factors considered by this court in determining that probable cause for the arrest existed, were attested to in this affidavit without contradiction by petitioner, but were not established in the record of the trial court proceedings. Petitioner objects to our consideration of this affidavit, arguing that to do so would violate petitioner's right of confrontation and cross-examination, which right is essential to due process of law as required by the Sixth Amendment and made applicable to the states through the Fourteenth Amendment. See, *e.g., Pointer v. Texas*, 380 U.S. 400, 13 L. Ed. 2d 923, 85 Sup. Ct. 1065 (1965); and *Douglas v. Alabama*, 380 U.S. 415, 13 L. Ed. 2d 934, 85 Sup. Ct. 1074 (1965).

■ Petitioner's objection is not well taken, and the cited cases are not apposite to the present proceedings. The guarantees of the Sixth Amendment are qualified by the opening words of that significant amendment: "In all criminal prosecutions . . . ." We long ago determined in accord with United States Supreme Court decisions, that habeas corpus is a *civil* proceeding, since it is an original suit for the enforcement of the civil right of personal liberty. *In re Ludwick v. Webb*, 23 Wn. 2d 115, 160 P.2d 504 (1945); See *Fay v. Noia*, 372 U.S. 391, 423, 424, 9 L. Ed. 2d 837, 83 Sup. Ct. 822 (1963).

■ It is apparent that use of affidavits in habeas corpus proceedings is not improper. See *In re Somday v. Rhay*, 67 Wn.2d 180, 184, 406 P.2d 931 (1965). And of course, petitioner may also have availed himself of the use of affidavits in his habeas corpus application.

Petitioner's final contention is that he cannot, consistent with due process of law, be convicted of the crime of aiding and abetting the unlawful possession of narcotics when the substantive crime was established by constitutionally inadmissible evidence. Petitioner argues that the three heroin capsules and a signed statement of James Bitrick (state's exhibit 2) were obtained and admitted into evidence in violation of certain constitutional guarantees.

█ We have already answered at length petitioner's arguments in regard to the heroin capsules. We do not find it necessary to retry the issue of the voluntariness of Bitrick's statement. For even were that statement found to have been involuntarily given, "The introduction of a coerced confession in evidence against one defendant is not in itself the imposition of constitutional wrong upon his codefendant. . . ." *United States v. Yeager,* 327 F:2d 311 (3d Cir. 1964), *cert. denied, New Jersey v. Godfrey,* 377 U.S. 977, 12 L. Ed. 2d 745, 84 Sup. Ct. 1882 (1964). Looking at the trial as a whole, we find that the jury was adequately cautioned, both at the time of the statement's admission and afterward, to consider the statement for the sole purpose of determining whether Bitrick committed the crime with which he was charged. Under these circumstances, we find no constitutional right of petitioner was violated by the use of this statement. See, *e.g., Malinski v. New York,* 324 U.S. 401, 410-412, 89 L. Ed. 1029, 65 Sup. Ct. 781 (1945); *State v. Taylor,* 47 Wn.2d 213, 217, 287 P.2d 298 (1955).

The petition is denied.

HILL, DONWORTH, FINLEY, OTT, HAMILTON, and HALE, JJ., concur.

WEAVER, J. (dissenting)—I dissent for two interrelated reasons.

### USE OF AFFIDAVIT

The majority opinion states that:

Some of the factors considered by this court in determining that probable cause for the arrest existed, were attested to in this affidavit [of Detectives Sprinkle and Waitt] without contradiction by petitioner, *but were not*

*established in the record of the trial court proceedings.* (Italics mine.)

I do not believe that the permissible scope of judicial inquiry in habeas corpus allows the consideration of an ex parte affidavit that has not been invited by an allegation of the petitioner that can be said to have "opened the door." If the door has been opened by allegations of petitioner which are dehors the record, an answering statement under oath indicates to us the evidence that would be produced upon a factual hearing. If the "door has not been opened" by allegations of petitioner, the affidavit becomes nothing more than an attempt of the state to bolster an otherwise weak case which has been attacked by habeas corpus.

As I read *In re Somday v. Rhay,* 67 Wn.2d 180, 406 P.2d 931 (1965), it is not to the contrary and cannot be said to stand for the broad proposition for which the majority cites it. Two affidavits were involved in *Somday.* There was no objection to one which fixed the location of a highway on patented land; the other was proper since it was made in response to an allegation made by petitioner regarding facts outside the record. In the instant case, the affidavit is an attempt to supplement the trial record.

The dangers inherent in the consideration of such an affidavit are well-illustrated by the instant affidavit, which was submitted 5½ years after the trial. Memories tend to become weaker rather than stronger with the passage of time.

The majority opinion states that:

Petitioner objects to our consideration of this affidavit, arguing that to do so would violate petitioner's right of confrontation and cross-examination, which right is essential to due process of law as required by the Sixth Amendment and made applicable to the states through the Fourteenth Amendment.

To my mind, to point out that habeas corpus is a civil proceeding is no answer to petitioner's contention that the affidavit invades his constitutional rights.

The availability of a procedure to regain liberty lost through criminal process cannot be made contingent upon

a choice of labels. *Smith v. Bennett*, 365 U.S. 708, 6 L. Ed. 2d 39, 81 Sup. Ct. 895 (1961).

Although the sixth amendment to the United States Constitution may be limited to criminal proceedings, the concept of due process is not.

I do not believe that consideration of the affidavit signed by Detectives Sprinkle and Waitt was consistent with due process of law. Accordingly, I feel that the majority's expansion of the scope of habeas corpus review is not only fundamentally unfair but will create unnecessarily complicated problems in future habeas corpus proceedings.

### PROBABLE CAUSE

Even assuming arguendo that consideration of the affidavit here involved was proper, I nevertheless cannot conclude that the six factors discussed in the majority opinion establish "probable cause" that a felony had been, was being, or was about to be committed.

Although petitioner may have been a "suspect" he cannot be arrested simply because he is a known narcotics user. Just as a person cannot be made subject to criminal prosecution on the sole basis of his "status" as a narcotics addict,[1] he cannot be made subject to arrest, the probable cause for which is his "status." Yet a careful reading of the record discloses that is what happened in this case. The conclusion of probable cause for arrest without warrant cannot be derived from the six factors relied upon by the majority.

Factors (1) and (5) are truisms, and as related to the conclusion of probable cause are non sequiturs. Factor (2) only establishes petitioner's "status," which cannot be the basis of "probable cause" for his arrest without warrant. Further, the information provided by the informers was not new to the officers. The insignificance of factors (3) and (4) is apparent from a reading of the record. Petitioner was observed, and became the subject of pursuit, a distance in excess of one mile away from the site at which he was

---

[1] *Robinson v. California*, 370 U.S. 660, 8 L. Ed. 2d 758, 82 Sup. Ct. 1417 (1962).

allegedly picking up heroin. There was no evidence that petitioner was coming from Jackson Street. The significance of factor (6) is destroyed by factor (1). Petitioner's admission that he was "loaded on goofers" does not furnish the missing link. Detective Sprinkle in his affidavit designated the capsule he saw on petitioner's tongue as "nembutal," which he admitted at the trial was a nonnarcotic barbiturate form of sleeping pill. The fact that petitioner was "loaded on goofers" explains why he was staggering at the time of the arrest. Possession of something recognized as a *nonnarcotic* does not furnish probable cause to arrest someone for the crime of unlawful possession of *narcotics*.

ROSELLINI, C. J., concurs with WEAVER, J.

---

July 13, 1966. Petition for rehearing denied.

