THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* LELAND PRICE, Defendant-Appellant.

Fifth District No. 75-70

Opinion filed March 15, 1976.

Stephen P. Hurley and Michael J. Rosborough, both of State Appellate Defender's Office, of Mt. Vernon, and Ken Hartmann, Law Student, for appellant.

Nicholas G. Byron, State's Attorney, of Edwardsville (Bruce D. Irish and Myra J. Brown, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE GEORGE J. MORAN delivered the opinion of the court:

Defendant-appellant, 19-year-old Leland Price, entered a plea of guilty to the charge of robbery pursuant to an agreement negotiated with the State. The trial court sentenced the defendant to a term of 4 to 12 years for the robbery. Defendant contends on appeal that the State breached the plea agreement and that the trial court's sentence on the plea of guilty was excessive.

Before accepting defendant's guilty plea and imposing sentence, the trial court inquired into the circumstances surrounding the crime to which defendant pled guilty and determined that there was a sufficient factual basis to support the plea. The factual basis was established by a statement of the prosecution describing the probable testimony at the trial of the victim of the robbery and of the observing officer, and by defendant's account of the incident, which was entered into the record by stipulation.

In substance, defendant's account of the crime was that on June 25, 1974, after having a beer with the victim, Victor Huebener, the defendant and Charles Hammonds left the Tenth Street Tavern in Alton, Illinois, with Huebener in Huebener's car. While driving on West 19th Street in Alton, Hammonds told Huebener to stop the car and get out. Hammonds then pulled a pistol from his pants and told Huebener that it was a stickup. Defendant and Hammonds then removed several articles from Huebener's pockets and Hammonds ordered Huebener to lie on the ground. When Huebener refused, Hammonds began beating him about the head with the pistol and kicked him several times after he had fallen to the ground. Defendant stated he took no part in the beating.

Victor Huebener's version of this incident differed from the defendant's, both with respect to the manner in which the defendant and Hammonds gained entry into Huebener's car and with respect to the

defendant's participation in the beating of Huebener. He contends that the defendant and Hammonds entered his car forcibly and ordered him to drive to a remote spot in the city of Alton where they robbed him. He also stated in his complaint and in his testimony at the sentencing hearing that both Hammonds and the defendant had beaten him.

The account offered by Carl Logan, the officer who observed the crime, also differs somewhat from that of the defendant. Officer Logan stated in his report and in his testimony at the sentencing hearing that he had first observed two men, one of whom he recognized as Charles Hammonds, holding another man against the side of a parked car and beating him. After calling for assistance, he returned to the scene and saw both the defendant and Hammonds standing over Huebener, but could not tell who was beating Huebener.

Defendant agreed to submit to a polygraph examination in order to resolve the conflict between his account of the incident and the versions related by Logan and Huebener. The results showed that defendant was telling the truth when he said he did not participate in Huebener's beating, but that his account of how he met Huebener was not truthful.

Although in some conflict, each of these accounts indicates that defendant unlawfully took personal property from the possession of Victor Huebener, while Huebener was under threat of physical harm. Several articles belonging to Huebener were found in the defendant's possession at the time of the arrest. They were a small black coin purse containing $2.24, a screw, a key and a black leather billfold containing personal papers, a Central Hardware credit card and a driver's license.

On August 1, 1974, the grand jury of Madison County indicted the defendant for armed robbery. On October 23, 1974, the defendant pled guilty to robbery. The plea was entered as the result of a negotiated agreement pursuant to Supreme Court Rule 402 (Ill. Rev. Stat. 1973, ch. 110A, par. 402). The terms of the plea agreement, as reported by the prosecutor, were that the defendant would plead guilty if the State would reduce the charge to robbery. The defendant also would be given a polygraph examination, a psychological examination and a presentence report, and the State would "stand mute and make no recommendation as to sentencing," although they would be allowed to introduce evidence in aggravation.

The trial court admonished the defendant pursuant to the requirements of Rule 402 and accepted the defendant's plea of guilty to the charge of robbery. The court then ordered a presentence investigation and set a date for the sentencing hearing.

At the sentencing hearing five witnesses testified in mitigation on behalf of the defendant, including the probation officer assigned to com-

plete the presentence investigation. Based on the results of his investigation and the results of a psychological examination, the probation officer recommended that defendant be granted probation. Defendant also testified on his own behalf at the sentencing hearing.

The victim, Victor Huebener, and the observing officer, Carl Logan, testified in aggravation on behalf of the State. In response to a question of the court, the prosecution also made the following comments regarding sentencing:

"Your Honor, the state did not make any recommendation, but I don't think it is in violation of either the word or spirit of the understanding for me to comment at this time that I think that based upon Mr. Price's record, that a period of incarceration is necessary or that he is not a suitable candidate for probation. The defendant has been given two chances before, and this is the third armed robbery charge. He testified he wanted to take care of his wife, but he wasn't taking care of her before. He had a good job making good money, working fulltime. He was under counsel, but he still went out and committed another crime. He has testified on his own to a disregard for the law, and while the People personally and again in keeping with our prior agreement, don't have any specific recommendation, I reiterate that we do recommend incarceration to that extent."

Defendant's counsel then argued that the court should adopt the recommendations of the court psychologist and probation officer and place the defendant on probation, to which the prosecution replied:

"Your Honor, I most strongly disagree with the opinion of Mr. Riley that recommendations of the Department of Corrections * * * Department of Adult Probation and these people who compile these reports, are in the best interest of society. If the Court will read these reports, you will find there is nothing in there to consider society's interest. They are written solely to determine the best interest of the subject being examined, in this case, Leland Price, and that is all they are concerned with in those examinations. They never ever consider what's in the best interest of society, and since this is not a child custody case * * * he talks about what's in the best interest of Leland Price. That is not controlling here. We are concerned as lawyers and as a Judge with what's in the best interest of society, and the State's Attorney's Office and this particular assistant, is very much of the opinion that these recommendations from the Adult Probation Department don't take into consideration all the facts that they should. And for that reason I ask the Court to disregard

the recommendations and to sentence this defendant to the Department of Corrections."

Defense counsel did not object to these comments of the prosecution regarding the sentencing of the defendant.

■■ The defendant argues on appeal that the State violated the agreement that induced defendant's plea of guilty by arguing that the defendant was not a suitable candidate for probation and that he should be imprisoned. Defendant contends that this recommendation against probation and in favor of incarceration was a breach of the State's promise to "stand mute and make no recommendation as to sentencing."

The State contends that defendant waived the opportunity to raise the issue of breach of the plea agreement by his failure to object to the assistant State's attorney's recommendation against probation. The State further contends that even if defendant had not waived the issue of breach by his failure to object, there was no breach of the plea agreement. The State bases this contention on the fact that the prosecution did not make any specific recommendation regarding length of sentence and on the theory that the prosecution's remarks were merely an extension of the reserved right of the State to put on witnesses and evidence in aggravation.

Failure to object in a timely and specific manner generally constitutes a waiver of the issue on appeal. However, plain error affecting substantial rights may be considered by an appellate court even though not raised at trial or on appeal. *People v. Stickler*, 31 Ill. App. 3d 726, 334 N.E.2d 471.) Supreme Court Rule 615(a) (Ill. Rev. Stat. 1973, ch. 110A, par. 615(a)) provides that plain errors or defects affecting substantial rights may be noticed by a reviewing court even though they were not brought to the attention of the trial court. That rule has been interpreted by the Supreme Court as permitting a reviewing court to "take notice of errors appearing upon the record which deprive the accused of substantial means of enjoying a fair and impartial trial and in criminal cases in which the evidence is closely balanced to consider errors that have not been properly preserved." *People v. Howell*, 60 Ill. 2d 117, 121, 324 N.E.2d 403, 405.

Rule 615(a) established a balancing test that comprehends the potential abuse and unfairness of the waiver rule and outlines a procedure governing the review of plain error that invests the reviewing court with the authority to consider error not objected to at trial where such error affects the substantial rights of a defendant. The exercise of this authority by a reviewing court is discretionary, depending; *inter alia*, on the closeness of the case, the extent to which the error may have contributed

to the final disposition, and the magnitude of the alleged error. *People v. Doss*, 26 Ill. App. 3d 1, 324 N.E.2d 210.

If the prosecution's recommendations against probation affected a substantial right of the defendant or had an identifiable impact on the trial court's sentencing decision, defense counsel's failure to object does not preclude us from considering the issue of breach of the plea agreement. Reserving for the moment judgment on the question of whether the prosecutor actually did violate the terms of the plea agreement, it is clear that if the State did not fulfill a promise that induced defendant's plea of guilty, then the defendant has thereby suffered a denial of a substantial right. A plea of guilty entered by a defendant in a criminal action, particularly where such plea may result in imprisonment and resultant loss of liberty, certainly can be said to affect the defendant's substantial rights. The United States Supreme Court in *Boykin v. Alabama*, 395 U.S. 238, 242, 23 L. Ed. 2d 274, 279, 89 S. Ct. 1709, concluded that "[a] plea of guilty is more than a confession which admits that the accused did various acts; it is itself a conviction; nothing remains but to give judgment and determine punishment." The court held a trial court's acceptance of a guilty plea to be a violation of due process because the record did not reflect that the plea had been made voluntarily.

Thus, if the plea agreement that induced defendant's plea of guilty to the charge of robbery was in fact violated by the prosecution, then defendant's plea is thereby rendered involuntary and the trial court's acceptance of that plea is a violation of defendant's right to due process of law. A plea of guilty made in reliance on an unfulfilled promise is not voluntarily made by a defendant. (*Santobello v. New York*, 404 U.S. 257, 30 L. Ed. 2d 427, 92 S. Ct. 495; *People v. Pier*, 51 Ill. 2d 96, 281 N.E.2d 289; *People v. Milligan*, 30 Ill. App. 3d 26, 332 N.E.2d 452.) It is constitutionally mandated that a plea of guilty be made voluntarily and a trial court's acceptance of an involuntary guilty plea is a violation of due process. *People v. Hufford*, 18 Ill. App. 3d 646, 310 N.E.2d 216.

■■ The remaining question is whether the prosecutor's comments at the sentencing hearing amounted to a violation of the plea agreement and thereby rendered defendant's plea involuntary. The State contends that there was no violation of the agreement, arguing that the prosecutor did not make any specific recommendation regarding the length of sentence and that his remarks were simply an extension of the reserved right of the State to put on witnesses and evidence in aggravation. In order to induce defendant's plea of guilty, the State specifically promised to make no recommendation regarding sentencing. While no specific recommendation as to length of sentence was made, it cannot be said

that the State's vigorous opposition to probation and recommendation for incarceration was not a recommendation as to sentencing.

The State relies on a number of cases in which the prosecution, pursuant to plea negotiations, promised to withhold all recommendations regarding sentencing and subsequently commented on sentencing. In each of these cases the prosecution's alleged violations of the plea agreements either were not as substantial as in this case or were not as damaging to the defendant's interests.

In *People v. Martin*, 19 Ill. App. 3d 631, 312 N.E.2d 24, the prosecution promised to leave sentencing to the discretion of the court with only a stipulated maximum of 1 year for the defendant. The trial court allowed the prosecution to put on witnesses in aggravation, and the defendant was questioned extensively by the State. Although the State vigorously questioned the defendant regarding the circumstances surrounding the crime and the motivations behind his acts, the State did not make any recommendation regarding a sentence and the Fourth District Appellate Court held that neither the letter of the plea agreement nor its spirit were violated.

In *People v. Huff*, 45 Ill. 2d 186, 258 N.E.2d 356, the Supreme Court considered a guilty plea that had been induced by a promise that the State's attorney "would not recommend either a minimum or maximum sentence, but would leave it up to the court." At the hearing in mitigation and aggravation the State's attorney stated that the court should impose a sentence "both for the act itself and as further deterrent for others who might think along the same lines." The court concluded that while the State's attorney's statement was inconsistent with the spirit of the plea agreement, it did not violate the letter of the agreement since no recommendation as to specific sentence was made. The agreement in *Huff* referred specifically to recommendations concerning the length of sentence and did not contemplate, as did the agreement in the present case, a broader prohibition against all recommendations regarding sentencing.

In *People v. Smith*, 28 Ill. App. 3d 908, 329 N.E.2d 896, this court was presented with a guilty plea induced by a promise that the State would make no recommendations as to sentencing, although the State reserved the right to put on witnesses in aggravation. The defendant had pled guilty to murder and to the aggravated battery of the deceased which had occurred 6 months before the murder. The trial court sentenced the defendant to terms of 3 to 9 years for the aggravated battery and 25 to 75 years for the murder. The State's only recommendation as to sentence was to ask for maximum sentence. In applying the balancing test em-

bodied in Supreme Court Rule ,615(a) to the facts in *Smith,* the fundamental inquiry becomes a question of whether the prosecutor's conduct and the trial court's acceptance of the guilty plea affected a substantial right of the defendant, and whether the recommendation as to sentencing, when viewed together with the circumstances surrounding the crime and the evidence presented in mitigation and aggravation, can reasonably be said to have had an unfair impact on the court's sentencing decision. Although the prosecutor's remark did not comport with the plea agreement and therefore might arguably have rendered the guilty plea involuntary, the recommendation for the maximum sentence probably had little effect on the trial court. The defendant had pled guilty to a murder which this court described as "a vicious unexplainable act of violence" for which he was sentenced to 25 to 75 years' imprisonment, and it seems unlikely that the trial court's sentencing decision would have been significantly different had the prosecutor not made the single statement that "we recommend the maximum sentence."

■■ In the present case, however, defendant received a presentence report that strongly recommended probation, several witnesses testified in mitigation on the defendant's behalf, and the chances for probation appeared reasonably good. The prosecution commented at length on its recommendation against probation and it can reasonably be said that given the closeness of the case, the vigorous recommendation of the State's attorney could have had an unfair impact on the sentencing decision. We therefore conclude that the promise that induced defendant's plea of guilty was breached by the prosecution and that as a result defendant's plea was involuntary.

A guilty plea entered as a result of an unfulfilled promise must be vacated. (*People v. Mahood,* 15 Ill. App. 3d 398, 304 N.E.2d 504, *aff'd,* 59 Ill. 2d 106, 319 N.E.2d 486.) Accordingly, defendant's sentence is vacated and the cause is remanded to the circuit court of Madison County for a new sentencing hearing in conformity with the views herein expressed.

Reversed and remanded.

EBERSPACHER and CARTER, JJ., concur.