[No. 47286–6.   En Banc.   January 15, 1982.]

*In the Matter of the Personal Restraint of*
FREDDIE LEE JAMES, *Petitioner.*

*Robert Adelman* of *Institutional Legal Services,* for petitioner.

*Jeffrey C. Sullivan, Prosecuting Attorney,* and *David W. Waterbury, Deputy,* for respondent.

PER CURIAM.—This personal restraint petition questions the authority of the State to renege on a plea bargain when the defendant, after pleading guilty pursuant to that bargain, *allegedly* commits additional misdemeanors. We hold that absent *proof* of misconduct, all plea bargains must be enforced.

Petitioner Freddie Lee James was charged with first degree robbery. His crime involved approximately one dollar and he is, as he was then, mentally handicapped and cannot read or write.

A plea agreement was reached, whereby petitioner agreed to plead guilty to second degree robbery if the prosecutor would recommend probation. Pursuant to that agreement, a guilty plea was entered.

Finding a basis for the plea, the trial court accepted it and released petitioner pending his sentencing. He soon, however, was arrested for two additional misdemeanors. These alleged misdemeanors occurred after both the plea agreement and the entry of his plea.

At sentencing the prosecutor refused to recommend probation, claiming that those misdemeanors excused its performance. Petitioner's attorney, on the other hand, argued that petitioner's record still justified probation. He, however, did not object to the State's position. Instead, he simply expressed appreciation for the State's predicament.

Petitioner became quite confused. He had thought the court would allow him to continue his schooling. He openly denied the validity of the misdemeanor accusations. He also

allegedly requested his attorney to withdraw his plea.

Unmoved and relying on a presentence report, the trial court found petitioner to be a poor probation risk and thus sentenced him to prison.

I

■ Petitioner now claims that the State, by withholding its recommendation, violated his constitutional rights. There can be no question that prosecutorial negation of a plea agreement presents an issue of constitutional magnitude. A plea bargain involves the waiver of several constitutional rights. *See Santobello v. New York,* 404 U.S. 257, 264, 30 L. Ed. 2d 427, 92 S. Ct. 495 (1971) (Douglas, J., concurring); *State v. Tourtellotte,* 88 Wn.2d 579, 564 P.2d 799 (1977); *In re Palodichuk,* 22 Wn. App. 107, 589 P.2d 269 (1978); *Gamble v. State,* 95 Nev. 904, 604 P.2d 335 (1979); *People v. Price,* 36 Ill. App. 3d 566, 344 N.E.2d 559 (1976). They include the right to a jury trial, to confront one's accusers, to present witnesses in one's defense, to remain silent, and to be convicted by proof beyond a reasonable doubt. *Santobello, supra; Tourtellotte, supra.* For this reason, a plea bargain warrants the same judicial solicitude given a guilty plea, *see Santobello, supra; Tourtellotte, supra,* and has constitutional significance.

Though this issue could have been appealed and was not, there is no evidence that the failure to do so was deliberate. On the contrary, the record shows that the court twice informed petitioner that by pleading guilty he was waiving all appeal rights. Petitioner had no reason to suspect that he had a right to appeal after such admonitions by the trial court. In light of these admonitions and the constitutional nature of the claims, the petition should be reviewed.

II

■ Arguing that his constitutional rights have been violated, petitioner contends that he is entitled to specific performance of his bargain. When a prosecutor breaches an agreement by failing to recommend probation, a defendant is entitled to withdraw any entered plea or to have the bar-

gain specifically enforced. *In re Palodichuk, supra; see Darnell v. Timpani,* 68 Wn.2d 666, 414 P.2d 782 (1966); *Tourtellotte, supra.* This right exists even though the sentencing judge was not bound, nor even influenced, by the prosecutor's recommendation. *In re Palodichuk, supra; Santobello, supra.* It exists provided the defendant has complied with the agreement. *In re Palodichuk, supra; Tourtellotte, supra.*

Regarding compliance by the defendant, several jurisdictions have concluded that merely accusing the defendant of misconduct does not relieve the State of its bargained–for duty. *See, e.g., United States v. Simmons,* 537 F.2d 1260 (4th Cir. 1976); *Gamble, supra; State v. Warren,* 124 Ariz. 396, 604 P.2d 660 (Ct. App. 1979); *State v. Curry,* 49 Ohio App. 2d 180, 359 N.E.2d 1379 (1976). They have reasoned that the issue of noncompliance is a question of fact to be determined by the court, and that to permit the State to unilaterally nullify an agreement would constitute "manifest impropriety," *Simmons,* at 1261, and an abdication of the court's duty to ensure "fairness and candor." *Tourtellotte,* at 583.

To ensure fairness, those jurisdictions have required, before relieving the State of its promises, that an evidentiary hearing be held and that the defendant be given an opportunity to call witnesses and have other due process rights, including the requirement that the State prove, by a preponderance of the evidence, that the defendant has failed to perform his or her part of the agreement. *Simmons, supra; Gamble, supra; Warren, supra; Curry, supra.* Like them, we believe such a procedure is constitutionally required.

The law has over recent years created an expectation that the State will keep its bargains unless the defendant has failed to keep his or hers. As we noted in *Tourtellotte,* at page 584:

> If a defendant cannot rely upon an agreement made and accepted in open court, the fairness of the entire criminal justice system would be thrown into question.

Once the law has created such an expectation or right, due process requires a hearing before it can be taken away. *See Vitek v. Jones,* 445 U.S. 480, 63 L. Ed. 2d 552, 100 S. Ct. 1254 (1980); *In re Sinka,* 92 Wn.2d 555, 599 P.2d 1275 (1979). A hearing ensures that the right or the expectation is not arbitrarily denied. With plea bargains, if there were no evidentiary hearings, a defendant merely accused of postplea crimes, but innocent and later acquitted of them, could nonetheless lose the benefit of his or her bargain.

The State carries a heavy burden of demonstrating a voluntary, knowing, and intelligent waiver of any constitutional right. *State v. Coyle,* 95 Wn.2d 1, 621 P.2d 1256 (1980); *State v. Sweet,* 90 Wn.2d 282, 581 P.2d 579 (1978). Such waivers will not be presumed. *Coyle, supra; Sweet, supra.* Here petitioner has a right to such a hearing notwithstanding his failure to make a motion either to withdraw the plea or to enforce the agreement. The facts of this case dictate such failure does not constitute a knowing waiver of his constitutional rights. Petitioner is unable to read and write and has spent over a year in a school for retarded children. Nothing in the record indicates he was aware of the consequences of failing to make such a motion. Furthermore, petitioner alleges that he requested his attorney to withdraw the plea,[1] and he contends he is not guilty of the alleged misdemeanors. In its response to this petition, the State does not deny these facts; nor does the State allege that the petitioner waived a right to have this question reviewed on collateral review. Not only does the State fail to claim that the question has been waived, the record provides no basis for finding petitioner voluntarily waived his right to an evidentiary hearing.

The case is therefore remanded to Superior Court to determine whether to permit petitioner to withdraw his

---

[1]Where procedural defects are attributable to incompetent counsel, a Sixth Amendment claim by a petitioner in a personal restraint petition should not be foreclosed by such procedural defects.

plea or to grant specific performance of the bargain.[2] The appropriate remedy is for the trial court to decide, with the defendant's preference to be accorded considerable weight. *Tourtellotte, supra; In re Palodichuk, supra; State v. Pope,* 17 Wn. App. 609, 564 P.2d 1179, *review denied,* 89 Wn.2d 1009 (1977).

The petition is granted and the case remanded for proceedings consistent with this opinion.

UTTER, J. (concurring)—While I agree with the result reached by the per curiam opinion, I feel a more searching analysis of our standards for review of claims raised in personal restraint petitions is required.

RAP 16.4(c)(2) provides that personal restraint petitions may be used to challenge a "conviction . . . obtained . . . in violation of the Constitution of the United States or the constitution or laws of the State of Washington . . ." That rule is not conditioned on the existence of any prior appeals or objections, and it reflects the policy that petitions be decided on their merits.

RAP 16.4 was patterned after the ABA standards relating to postconviction remedies, specifically Standard 2.1. *State v. Rolax,* 84 Wn.2d 836, 837, 529 P.2d 1078 (1974); *see ABA Standards Relating to Post Conviction Remedies,* Std. 2.1 (Approved Draft, 1968). The commentary to that ABA standard states that applicants with otherwise valid claims are not to be denied relief because of prior procedural missteps. The advisory committee recommended that

> no such claim should be denied for failure to present it at a prior time unless the withholding of the claim is so serious as to amount to abuse of process . . .

*ABA Standards,* Std. 2.1, Commentary at 35. The merits of any petition are to be reached because

the inquiry required to establish abuse of process is far

---

[2]As there was not a determination that petitioner even committed the misdemeanors, we need not decide if the alleged acts are the type of criminal activity which breaches the agreement.

more burdensome than that required to determine the validity of the claim, and since most applications do not present valid claims, it is simpler and more expeditious to reach the merits . . .

*ABA Standards,* Std. 2.1, Commentary at 36. This rationale is repeated elsewhere in the ABA standards.

In most instances of unmeritorious claims, the litigation will be simplified and expedited if the court reaches the underlying merits despite possible procedural flaws.

*ABA Standards,* Std. 6.1(d).

This policy, besides being reflected in RAP 16.4, was also the foundation for that rule's predecessor, the former CrR 7.7. *Holt v. Morris,* 84 Wn.2d 841, 844–45, 529 P.2d 1081 (1974). In *Holt,* we stated that

with the adoption of CrR 7.7 the preexisting, somewhat haphazard habeas corpus procedure which had developed essentially on a case–to–case basis has now been replaced by a sound, more expeditious, single, comprehensive system for post–conviction review *designed to avoid technicalities and delay and to focus attention promptly and directly on the merits or lack of merits presented in petitions for post–conviction relief.*

(Italics mine.)

The right to use postconviction proceedings to raise constitutional claims is specifically guaranteed by RCW 7.36-.130 and .140. Like RAP 16.4, those statutes confer that right unconditionally. They unambiguously require state courts to determine postconviction constitutional claims. They provide:

No court or judge shall inquire into the legality of any judgment or process whereby the party is in custody, or discharge him when the term of commitment has not expired, in either of the cases following:

(1) Upon any process issued on any final judgment of a court of competent jurisdiction *except where it is alleged in the petition that rights guaranteed the petitioner by the Constitution of the state of Washington or of the United States have been violated.*

(Italics mine.) RCW 7.36.130(1).

In the consideration of any petition for a writ of

habeas corpus by the supreme court or the court of appeals, whether in an original proceeding or upon an appeal, if any federal question shall be presented by the pleadings, *it shall be the duty of the supreme court to determine in its opinion whether or not the petitioner has been denied a right guaranteed by the Constitution of the United States.*

(Italics mine.) RCW 7.36.140.

Consistent with those statutes and RAP 16.4, we have reviewed petitions presenting unappealed constitutional issues. *See, e.g., In re Keene,* 95 Wn.2d 203, 622 P.2d 360 (1980); *In re Schellong,* 94 Wn.2d 314, 616 P.2d 1233 (1980); *McNear v. Rhay,* 65 Wn.2d 530, 398 P.2d 732 (1965); *see generally Pettus v. Cranor,* 41 Wn.2d 567, 250 P.2d 542 (1952), *cert. denied,* 345 U.S. 967, 97 L. Ed. 1385, 73 S. Ct. 954 (1953); *Buckingham v. Cranor,* 45 Wn.2d 116, 273 P.2d 494 (1954), *cert. denied,* 348 U.S. 938, 99 L. Ed. 735, 75 S. Ct. 360 (1955); *Horn v. State,* 52 Wn.2d 613, 328 P.2d 159, *cert. denied,* 358 U.S. 900, 3 L. Ed. 2d 150, 79 S. Ct. 225 (1958); *Pettit v. Rhay,* 62 Wn.2d 515, 383 P.2d 889 (1963); *Little v. Rhay,* 68 Wn.2d 353, 413 P.2d 15, *appeal dismissed, cert. denied,* 385 U.S. 96, 17 L. Ed. 2d 196, 87 S. Ct. 331 (1966); *Scruggs v. Rhay,* 70 Wn.2d 755, 425 P.2d 364 (1967); *Hein v. Smith,* 35 Wn.2d 688, 215 P.2d 403, *cert. denied,* 340 U.S. 837, 95 L. Ed. 614, 71 S. Ct. 22 (1950); *White v. Rhay,* 64 Wn.2d 15, 390 P.2d 535 (1964); *Fleetwood v. Rhay,* 7 Wn. App. 225, 498 P.2d 891, *review denied,* 81 Wn.2d 1005 (1972).

In both *Keene* and *Schellong,* constitutional issues were considered, though no appeal had been taken. In *Keene,* at page 205, we stated:

a conviction may not be collaterally attacked upon a nonconstitutional ground which could have been raised on appeal, but was not. . . .

Upon a personal restraint petition, however, the court will consider a contention that the petitioning prisoner is presently detained in violation of the federal or state constitution. RAP 16.4(c)(2), 16.7(a)(2).

I am aware that a few of our recent cases have departed

from the above approach. *See, e.g., In re Haynes,* 95 Wn.2d 648, 628 P.2d 809 (1981); *In re Lee,* 95 Wn.2d 357, 623 P.2d 687 (1980); *In re Myers,* 91 Wn.2d 120, 587 P.2d 532 (1978), *cert. denied sub nom. Myers v. Washington,* 442 U.S. 912, 61 L. Ed. 2d 278, 99 S. Ct. 2828 (1979). In those cases the court suggested that the decision whether to review a petition would be made on a case–by–case basis, weighing the respective judicial and prosecutorial burdens against the interest in error–free trials.

Such a procedure is inconsistent with RCW 7.36 and the actual language of RAP 16.4. It is also a departure from the policies underlying our current court rule. RAP 16.4 is the product of a comprehensive balancing and is intended to displace any case–by–case resolution of whether we should entertain personal restraint petitions.

Furthermore, to the extent these cases stand for the proposition that procedural defects such as failure to make objection at trial or failure to raise a claim on appeal will serve to bar constitutional claims on collateral review, they eliminate *sub silentio* the possibility of collateral relief by personal restraint petition except in the most unusual of cases such as the one before us. Personal restraint petitions are not motions for reconsideration; the relief they seek is collateral. Thus they should not be limited by the very procedural defects that bar relief on direct review. The whole purpose of collateral review is to provide a forum for potentially meritorious prisoners' claims. Though it does tax the judicial system to provide such collateral review,[3] its proven historical value looms much larger than the particular economic exigencies with which we as judges are now beset. If the scope of collateral review is to be changed, it must be consciously done so the full effect on our system of justice may be felt. This, at least, would be more honest

---

[3]While the system of justice is taxed by providing a forum for collateral review, the attempt in cases like *In re Haynes,* 95 Wn.2d 648, 628 P.2d 809 (1981), and *In re Myers,* 91 Wn.2d 120, 587 P.2d 532 (1978), to narrow the scope of collateral review would only serve to clog the courts on direct appeal with claims of questionable merit, but which may, at some future time, prove successful.

than casting the personal restraint petition, under the guise of prudence, in a role that would deny it its original purpose and function.

Finally, even if collateral review of all constitutional claims is not accepted by this court, it should, at the very least, embrace the standards the federal courts have used to grant collateral relief on claims we have refused to entertain by way of personal restraint petition because of procedural defects. *See, e.g, Myers v. Washington,* 646 F.2d 355 (9th Cir. 1981); *Gibson v. Spalding,* 665 F.2d 863 (9th Cir. 1981).[4] If the court will not, at a minimum, embrace these federal standards, our state's personal restraint procedure will come to be viewed as a necessary exhaustion of state remedies, rather than as a method by which serious constitutional claims may be heard. Such a result would be a curious product of concerns for judicial economy. It casts upon federal courts a duty that state courts should not surrender.

Certainly the courts of this state have the greatest interest in determining the status of those convicted here. And to that end, we have a duty to the citizens of this state to monitor the constitutional claims presented.

In sum, our recent cases have represented an attempt to engraft a labyrinthine, technical procedure upon a very simple rule. As a result, they have engendered confusion among the bar and the courts of this state. This confusion underscores the necessity of applying RCW 7.36 and RAP 16.4 as written. Hence, I reiterate the rule that constitutional issues may be raised in a personal restraint petition,

---

[4]Federal courts will entertain habeas claims even though there is a state procedural bar when (a) the "cause" and "prejudice" tests of *Wainwright v. Sykes,* 433 U.S. 72, 53 L. Ed. 2d 594, 97 S. Ct. 2497, *rehearing denied,* 434 U.S. 880 (1977) are met, or (b) the rule of *Wainwright* is inapplicable because a petitioner had no reasonable basis for believing at trial that his rights had been violated. This latter criterion occurs when there has been a significant change in the law since the trial which would have been material to the conviction. *See* RAP 16.4(c)(4). In determining whether to give retroactive effect to changes in the law, we are guided by the rule of *Brown v. Louisiana,* 447 U.S. 323, 329 n.6, 65 L. Ed. 2d 159, 100 S. Ct. 2214 (1980).

absent a willful and deliberate failure to appeal them that amounts to abuse of process. *ABA Standards,* Std. 2.1, Commentary at 35.

STAFFORD and DOLLIVER, JJ., concur with UTTER, J.

HICKS, J. (concurring)—The facts of the case indicate that the petitioner can neither read nor write and that he has spent over a year in a school for retarded children. He did not appeal from the sentence imposed on a plea of guilty following a plea bargain. His present contention that he was confused at the time of sentencing concerning his right to appeal when the prosecuting attorney refused to abide by the agreement made prior to petitioner's guilty plea seems reasonable. In this instance, it seems clear that no conscious or deliberate choice was made by petitioner not to appeal. No protracted delay occurred before petitioner brought a personal restraint petition challenging the prosecutor's action on constitutional grounds. I am aware of no procedural or other reason barring petitioner's request. Consequently, I concur with the result of the per curiam opinion that this matter be remanded.

ROSELLINI, J. (dissenting)—I dissent. The law should be so written so as to not give an advantage to a defendant or to the State. It should be written to treat a defendant and the State impartially. The majority opinion gives to the defendant a special right to which he is not entitled and deprives the State of the right to enforce the law.

In every plea bargain, a defendant is given an opportunity to plead guilty to a lesser offense and many times to have several other crimes for which he is charged dismissed. The prosecutor will not file additional charges which could later result in a habitual criminal charge or consecutive sentences in the event a defendant is found guilty.

It is surely understood in plea bargaining that the State will act in good faith and that the defendant will abide by the law while he is awaiting sentencing.

One of the purposes served by plea bargaining is to give a defendant an opportunity to clear himself of more serious criminal charges and to obtain a lesser punishment, with the understanding that one of his aims is rehabilitation.

The State likewise obtains certain benefits from plea bargaining. It expeditiously clears up many crimes and avoids lengthy trials. The courts in approving plea bargains hope and assume that leniency will enhance the defendants' chance of rehabilitation.

To permit a defendant to claim the benefit of his plea bargain even though he has continued to pursue a course of unlawful conduct defeats the positive purposes of plea bargaining. When the prosecuting attorney agrees to make a recommendation and the defendant commits other crimes while awaiting sentencing, it is a useless act to require the prosecutor to recommend probation to the plea judge. How can any conscientious judge grant probation in the face of unrefuted evidence that its terms have already been broken? Requiring the prosecutor to recommend probation under such circumstances compromises his conscience and his oath of office.

In this case the commission of new crimes was not seriously disputed.[5] His attorney merely argued that probation should still be afforded him. The attorney did not object when the prosecutor refused to recommend probation and

---

[5]At time of sentence James never denied the facts as set forth in the supplemental presentence report. He simply stated he had learned his lesson and deserved another chance. The report recited:

According to the officers' report on the Simple Assault Charge, the victim, Eric Schweiger gave $25 to James for a prostitute. The prostitute refused to go with the victim and he wanted his money back from James. When James advised the victim that he did not have the money, the victim demanded it back and James hit him in the head with a pool cue. James then ran and the victim chased him.

James told the Officers that he did not take victim's money but was willing to give it back. He admitted having hit the victim with a pool cue but said that the victim was coming after him with a knife. . . .

This case was set for trial for January 7, 1980, and we assume the case was never heard as James was sentenced to the Department of Institutions on December 10, 1979.

made no recommendation, nor did he move to withdraw the guilty plea. These facts are sufficient to constitute waiver.

I do not agree that where the defense does not request a hearing, it is incumbent on the court to hold one anyway to determine whether or not the defendant is guilty of crimes reported in the presentencing report. Denying probation is not a conviction of such crimes. We have always recognized that a court may be aided by hearsay evidence in determining the sentence to be imposed. The defendant may discredit the report if he can, and presumably the court will disregard any reported facts which are challenged and not established to its satisfaction.

Furthermore, I do not agree that this is a proper case in which to grant relief, as there has been no significant change in the law since the sentence was imposed.

The facts of this case do not bring into play all of the constitutional rights that the majority envisions. Lest there be any confusion, let me point out the holding in *In re Keene*, 95 Wn.2d 203, 622 P.2d 360 (1980). The defendant was charged with the crime of forgery, RCW 9A.60.010(4), (5). Neither Keene's admission contained in his statement nor the facts subsequently revealed in the presentence report would support the conviction of forgery. The instrument was neither falsely made nor falsely completed.

A person cannot, constitutionally, be convicted of a crime where there is no evidence to show that he committed that offense; nor can his plea of guilty to an information which charges a crime for which defendant's acts would not constitute a crime charged, be sustained.

The case holds that an individual cannot be imprisoned for a crime which he did not commit; and whenever such a miscarriage of justice is called to the attention of the court, the individual is entitled to be released from imprisonment, regardless of the legal procedures involved.

I would deny the petitioner any relief.

BRACHTENBACH, C.J., and DORE and DIMMICK, JJ., concur with ROSELLINI, J.