IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 30302-1-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| PHILLIP SHERMAN INGRAM, | ) | |
| | ) | |
| Appellant. | ) | |

KULIK, J. — Phillip Ingram pleaded guilty to second degree child rape and third degree child molestation. On appeal, he contends that his guilty plea is invalid because the State breached the terms of his plea agreement. He maintains that the State undercut the agreement by suggesting that he was not eligible for a special sex offender sentencing alternative (SSOSA), RCW 9.94A.670, even though he was found to be amenable to treatment. We agree the State undercut the terms of the agreement and remand to allow Mr. Ingram to choose to withdraw his plea or seek specific performance of the agreement.

FACTS

Around 10:30 p.m. on New Year's Eve, 14-year-old SMC went to the home of her friend, 13-year-old BMB. The girls were joined by two young men, CDM and KLG. BMB telephoned John Clendaniel, who agreed to buy liquor for her and her friends. After getting the liquor, the four young people drove to Phillip Ingram's apartment. One of the young people knew Mr. Ingram's roommate, but none claimed to know Mr. Ingram. At the apartment, they consumed the liquor provided by Mr. Clendaniel and liquor found in Mr. Ingram's apartment. Over the course of the night, Mr. Ingram allegedly had sexual contact with BMB and SMC.

Mr. Ingram was charged with one count of second degree rape of a child, third degree child molestation, and furnishing alcohol to a minor. Mr. Ingram pleaded guilty to the charges of second degree rape and third degree child molestation. In return, the State agreed to recommend dismissal of the count of furnishing alcohol to a minor and to recommend a SSOSA if the defendant was found amenable to treatment. At the plea hearing, the court informed Mr. Ingram, "I see the State's going to recommend SSOSA . . . if you are found to be amenable to treatment. There will have to be a report prepared by [Department of Corrections (DOC)] and then they'll make a recommendation."

2

Report of Proceedings (RP) (June 27, 2011) at 5. The court ordered a SSOSA evaluation and a presentence investigation report (PSI).

A psychosexual evaluation was completed to determine Mr. Ingram's suitability for a SSOSA. Dr. Ronald Page, a clinical psychologist, recommended that Mr. Ingram may be a suitable candidate for a SSOSA and an acceptable risk in the community. Dr. Page determined that there was little known history to suggest that Mr. Ingram was predatory, and that his crime appeared to be situationally provoked and opportunistic. Dr. Page suggested treatment that would help Mr. Ingram understand his social responsibilities. Dr. Page concluded that any penal confinement should be for punishment purposes. He did not believe that confinement for community protection was justifiable based on the information available to him.

The DOC completed a PSI subsequent to Dr. Page's report. The PSI concluded that Mr. Ingram was not eligible for a SSOSA because he did not admit responsibility for the crimes, he did not have a prior relationship with the victims as required by the SSOSA guidelines, and the victims and their families did not support the sentence. The PSI recommended a standard range sentence.

At the sentencing hearing, the State acknowledged to the court that it entered into a plea agreement to recommend a SSOSA if Mr. Ingram was amendable to treatment and that Dr. Page determined that Mr. Ingram was amenable. Nevertheless, the State indicated that it had reservations about the amenability determination because the information gathered through the DOC investigation indicated the opposite. The State pointed out that Mr. Ingram did not take responsibility for his actions and blamed the victims. The State concluded, "Dr. Page says, yes, he is amenable, so the State will follow that ruling, or his reasoning. But if you look at everything else, it's—just almost flies in the face, and I don't know if I strictly have to go by what Dr. Page, or I can look at everything and say, yes, he is amenable, no, he is not. But I will stay with it because Dr. Page thinks he might be able to work with him. But everything else frightens me." RP (Sept. 8, 2011) at 9.

The trial court responded, "Well, I'm accepting your recommendation as being for [a] SSOSA." RP (Sept. 8, 2011) at 9.

The court heard testimony from one of the victim's family expressing their disapproval of a SSOSA. The court also heard from a DOC corrections officer who stated that Mr. Ingram was not eligible for a SSOSA because he did not have a prior relationship with the victim. The DOC officer also pointed out that the victim's opinion

4

should be given weight in determining whether to grant a SSOSA and that the victim's family opposed the SSOSA.

Ultimately, the trial court found that Mr. Ingram did not qualify for a SSOSA under the SSOSA statute. The court found that Mr. Ingram did not make a clear statement of responsibility for the crime, that Mr. Ingram did not have an established relationship with the victim as required by the SSOSA statute, and that a SSOSA sentence was not appropriate in light of the victim's opinions. The trial court sentenced Mr. Ingram to a standard range sentence.

Mr. Ingram appeals. He contends that the State breached the terms of the plea agreement by suggesting that Mr. Ingram was not eligible for a SSOSA.

## ANALYSIS

"Because a plea agreement is a contract, issues concerning the interpretation of a plea agreement are questions of law reviewed de novo." *State v. Bisson*, 156 Wn.2d 507, 517, 130 P.3d 820 (2006).

In plea agreements, fundamental rights of the accused are at stake, and "[d]ue process requires a prosecutor to adhere to the terms of the [plea] agreement." *State v. Sledge*, 133 Wn.2d 828, 839, 947 P.2d 1199 (1997). "The State fulfills its obligations if it acts in good faith and does not contravene the defendant's reasonable expectations that

arise from the agreement." *State v. McInally*, 125 Wn. App. 854, 861-62, 106 P.3d 794 (2005).

While the State does not have a duty to make the recommendation enthusiastically, the State does have a related duty not to undercut the terms of the agreement either "explicitly or by conduct evidencing an intent to circumvent the terms of the plea agreement." *Sledge*, 133 Wn.2d at 840. The test to determine breach of a plea agreement is whether the words and actions of the State, when viewed objectively, contradict a promise. *Id.*

A defendant has a choice of remedy when the State breaches a plea agreement. *State v. Van Buren*, 101 Wn. App. 206, 217, 2 P.3d 991 (2000) (quoting *State v. Jerde*, 93 Wn. App. 774, 782-83, 970 P.2d 781 (1999)). The defendant is entitled to either withdraw his plea, or seek specific enforcement of the State's agreement. *Id.* A choice of specific performance entitles a defendant to a new sentencing hearing in front of a different judge who has the discretion to accept or reject the State's recommendation. *Id.* at 218. A defendant's right to either remedy exists even though the sentencing judge was not bound or influenced by the prosecutor's recommendation. *In re Pers. Restraint of James*, 96 Wn.2d 847, 850, 640 P.2d 18 (1982).

A SSOSA allows certain first time sex offenders to receive a suspended sentence. RCW 9.94A.670. The SSOSA provision "was intended to be used for those offenders who had committed less serious crimes and who were thought to be amenable to treatment." *State v. Goss*, 56 Wn. App. 541, 544, 784 P.2d 194 (1990).

An offender is eligible for a SSOSA if all the criteria listed in RCW 9.94A.670(2) are met. RCW 9.94A.670. One of the two of the criteria applicable to this situation is that, "(a) . . . the offender must, as a part of his or her plea of guilty, voluntarily and affirmatively admit he or she committed all of the elements of the crime to which the offender is pleading guilty." RCW 9.94A.670(2). The other criteria applicable here is that, "(e) The offender had an established relationship with, or connection to, the victim such that the sole connection with the victim was not the commission of the crime." RCW 9.94A.670(2).

If the court deems an offender eligible, an evaluation may be ordered to determine if an offender is amenable to treatment. RCW 9.94A.670(3). "The examiner shall assess and report regarding the offender's amenability to treatment and relative risk to the community." RCW 9.94A.670(3)(b).

Examinations and treatment are to be conducted by certified sex offender providers or certified affiliate sex offender providers, unless the court finds an exception as stated in RCW 9.94A.670(13)(a) or (b). "'Certified sex offender treatment provider' means a licensed, certified, or registered health professional who is certified . . . to examine and treat sex offenders pursuant to chapters 9.94A and 13.40 RCW and sexually violent predators under chapter 71.09 RCW." RCW 18.155.020(1).

After receipt of the reports, the court determines whether a SSOSA is a suitable sentence for the offender. RCW 9.94A.670(4). "[T]he court shall consider whether the offender and the community will benefit from use of this alternative, consider whether the alternative is too lenient in light of the extent and circumstances of the offense, consider whether the offender has victims in addition to the victim of the offense, consider whether the offender is amenable to treatment, consider the risk the offender would present to the community, to the victim, or to persons of similar age and circumstances as the victim, and consider the victim's opinion whether the offender should receive a treatment disposition under this section." RCW 9.94A.670(4). Further, the court shall give great weight to the victim's opinion with respect to granting a SSOSA. RCW 9.94A.670(4).

Mr. Ingram contends that the State undercut the terms of the agreement by expressing reservations that Mr. Ingram may not be eligible for a SSOSA. The State

8

counters by contending that it did not undercut the agreement by mentioning the PSI. Instead, the State maintains that it was inquiring into the court's interpretation of the agreement, specifically the finding of amenability. The State argues that the court's referral to the PSI in the plea hearing suggests that it was the preferred source for determining amenability, and Mr. Ingram was not amenable because he did not acknowledge his responsibility to the PSI evaluator.

The State also argues that it did not breach the plea agreement as evidenced by the trial court's verbal acceptance of the State's SSOSA recommendation. The State maintains that the court compartmentalized the statements regarding clarification from the recommendation for a SSOSA.

The State's contentions fail. The State had a duty to recommend the SSOSA as part of the plea agreement after Mr. Ingram was found to be amenable to treatment. The findings in the PSI did not relieve the State of its duty. First, Dr. Page's report controlled the determination of amenability. Even though the plea agreement did not define amenability or the source of the amenability determination, it is reasonable for an offender to assume that such a finding would be made by the clinical psychologist whose purpose was to determine amenability. If the State wished for clarification regarding the

9

plea agreement, it should have expressly asked for clarification before making its recommendation.

Second, the PSI was not applicable to the sentencing recommendation because the PSI did not address amenability. Instead, the PSI expressly addressed Mr. Ingram's eligibility for a SSOSA. For instance, the PSI's findings regarding Mr. Ingram's lack of responsibility quoted the section of the SSOSA statute that addresses eligibility. The PSI's determination of eligibility was separate and distinct from a determination of amenability. The only report that specifically addressed Mr. Ingram's amenability, meaning his treatment and risk to reoffend, came from Dr. Page.

Last, the State's use of the eligibility findings to challenge Mr. Ingram's amenability was inappropriate. The State could not take portions of the PSI related to eligibility and use them to cast doubt on Dr. Page's conclusion that Mr. Ingram was amenable to treatment. The information contained in the PSI was to be considered by the trial court in making a final determination of whether a SSOSA sentence was appropriate under the circumstances.

We determine that the State undercut the terms of the plea agreement by suggesting that a SSOSA sentence was not appropriate, even though Mr. Ingram was found amenable to treatment by Dr. Page, a clinical psychologist. It is irrelevant that the

trial court accepted the State's recommendation for a SSOSA, as the State's actions still undermined the agreement. On remand, Mr. Ingram may choose to withdraw his plea or seek specific enforcement of the State's agreement.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Kulik, J.

WE CONCUR:

Korsmo, C.J.

Siddoway, J.