**FILE**

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
NOVEMBER 27, 2024

*González, C.J.*
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
NOVEMBER 27, 2024

SARAH R. PENDLETON
ACTING SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 102311-1 |
| Petitioner, | ) | |
| | ) | En Banc |
| v. | ) | |
| | ) | Filed: November 27, 2024 |
| DARREN S. HARRIS, | ) | |
| Respondent. | ) | |

MADSEN, J.—At issue here is this court's decision in *State v. Houston-Sconiers*, 188 Wn.2d 1, 391 P.3d 409 (2017), and how it applies in the context of juvenile plea agreements, specifically those agreements with joint sentence recommendations. We hold that while juvenile defendants on direct review receive the benefit of *Houston-Sconiers*, resentencing is not the appropriate remedy when the trial court imposes the sentence the parties bargained for. When a defendant's plea agreement requires them not to recommend a lesser sentence, the defendant may present mitigating evidence only if asked by the court to do so. However, when a trial court does not accept a plea agreement and intends to impose a sentence other than the joint recommendation, the court must meaningfully consider mitigating evidence of youth under *Houston-Sconiers* and the parties must candidly answer the court's questions.

In this case, no error occurred. Darren Harris received the sentence he bargained for and resentencing is not required. Accordingly, we reverse the Court of Appeals in part and we affirm Harris's sentence.

BACKGROUND

The following facts are taken from the Court of Appeals' decision below. *State v. Harris*, 27 Wn. App. 2d 522, 533 P.3d 135 (2023). They are not disputed here.

In 2011, 17-year-old Harris fatally stabbed an acquaintance approximately 21 times and stole his wallet. Harris later admitted to the stabbing. The State charged Harris with first degree murder with a deadly weapon. Based on a prior juvenile adjudication for assault, Harris faced a standard range sentence of 240 to 320 months, with additional "flat time" for the deadly weapon enhancement.

After months of protracted negotiation, Harris pleaded guilty to second degree murder while armed with a deadly weapon and to first degree robbery. The standard range was 142 to 244 months for the murder charge and 41 to 54 months for the robbery. Harris and the State jointly recommended a sentence of 220 months for the second degree murder charge, with 24 months for the deadly weapon enhancement, and 54 months for the robbery to be imposed concurrently. In total, the parties agreed to recommend 244 months (approximately 20 years) of confinement.

Harris pleaded guilty, and the trial court accepted the plea. At sentencing, the prosecutor told the court that the plea was an agreed recommendation. Harris's defense attorney urged the court to follow the recommendation because it "was a heavily negotiated plea." Tr. of Proc. (Aug. 17, 2012) at 38. The judge followed the

recommendation, stating that if the sentence had been 220 months, the court "wouldn't have followed it, because certainly it needs to be . . . [220] months plus [24] months." *Id.* at 38-39.

In 2020, Harris filed a personal restraint petition. *Harris*, 27 Wn. App. 2d at 528. Harris argued he was entitled to resentencing primarily based on *Houston-Sconiers* in order for the court to consider the mitigating qualities of youth. The Court of Appeals dismissed the petition as frivolous, noting among other things, that Harris presented no evidence of mitigation. Ord. Dismissing Pers. Restraint Pet., *In re Pers. Restraint of Harris*, No. 37530-7-III, at 4 (Wash. Ct. App. June 2, 2020).

In May 2021, Harris filed a notice of appeal. The State moved to dismiss the appeal as untimely. In response, Harris sought an extension of time under RAP 18.8(b), arguing he was not properly advised of his right to appeal. Comm'r's Ruling, *State v. Harris*, No. 38217-6-III (Wash. Ct. App. Aug. 9, 2021). The Court of Appeals commissioner granted the extension of time.

At the Court of Appeals, the parties disputed whether Harris "ever bound himself [to the plea agreement] in a way that would limit his freedom to seek a lesser sentence." *Harris*, 27 Wn. App. 2d at 529. Pursuant to a reference hearing, the court found that Harris had agreed to join the State's recommendation and *not* to seek a lesser sentence. *Id*. at 529-30; *see also* Findings of Fact for Ref. Hr'g on Plea Agreement & Sent'g, *State v. Harris*, No. 11-01-00945-4, at 1 (Yakima County Super. Ct., Wash. Apr. 14, 2023).

The Court of Appeals accepted the reference hearing findings and examined Harris's argument that he was entitled to resentencing under *Houston-Sconiers*. *Harris*, 27 Wn. App. 2d at 530, 532.

First, the court concluded that any resentencing hearing in which Harris explicitly or implicitly sought a lesser sentence would breach his plea agreement and the State would be entitled to rescind the agreement. *Id.* at 532-35. Next, the court recognized that as a new rule, *Houston-Sconiers* applies retroactively to all cases pending on direct appeal or that are not yet final. *Id*. at 536 (citing *State v. Evans*, 154 Wn.2d 438, 444, 114 P.3d 627 (2005)). Thus, the court held that *Houston-Sconiers* applies to Harris's case as a direct appeal. The State did not dispute that consideration of Harris's age was required, arguing instead that the error was harmless. Alternatively, the State argued that the remedy was not resentencing but for Harris to withdraw his guilty plea.

The Court of Appeals concluded that the State could not show the error was harmless. There was no way to know what information the sentencing court would have yielded in complying with *Houston-Sconiers*, therefore the Court of Appeals had no way to assess whether the information would have affected sentencing. *Id*. at 537 (quoting *Parker v. Dugger*, 498 U.S. 308, 319, 111 S. Ct. 731, 112 L. Ed. 2d 812 (1991)).

Despite finding a *Houston-Sconiers* violation, the Court of Appeals held that resentencing was not the appropriate remedy. Harris did not explain how he would avoid breaching the plea agreement at resentencing, and the State should not be required to participate in a resentencing process that is materially different to what the parties

4

bargained for in the original agreement. Instead, the court "recognize[d] Mr. Harris's right to move to withdraw his guilty plea." *Id*. at 540 (formatting omitted).

The State filed a motion for reconsideration. When that motion was denied, the State petitioned for review in this court. Pet. for Rev. at 1, 4. Harris answered and filed a cross petition for review only on the appropriate remedy. Answer & Cross-Pet. for Rev. at 2-3.

We granted both petitions. *State v. Harris*, 2 Wn.3d 1010 (2023). We also received amici curiae briefing from the Washington Association of Prosecuting Attorneys in support of the State and from Human Rights for Kids in support of Harris.

## ANALYSIS

*Houston-Sconiers* requires trial courts to consider a juvenile defendant's youth and exercise discretion when sentencing juvenile offenders in criminal court. 188 Wn.2d at 21. We have not examined *Houston-Sconiers*'s broad language in the context of plea agreements with joint sentencing recommendations on direct review. This case presents such an opportunity.

Because this case sits at the confluence of *Houston-Sconiers*, plea agreements, and the obligations for courts and parties flowing therefrom, it is useful to first examine those authorities.

### Houston Sconiers

*Houston-Sconiers* extended Eighth Amendment protections against disproportionate punishment to all juveniles subject to the adult standard Sentencing Reform Act of 1981 (SRA) sentence ranges and enhancements. *Id*. at 20-21; U.S.

CONST. amend. VIII; ch. 9.94A RCW. To effectuate these protections, we announced rules characterized as the "dual mandates" of *Houston-Sconiers*. *In re Pers. Restraint of Williams*, 200 Wn.2d 622, 630, 520 P.3d 933 (2022). Sentencing courts must consider the mitigating qualities of youth at sentencing, and those courts must have discretion to impose sentences below the standard ranges. *Id.* (citing *Houston-Sconiers*, 188 Wn.2d at 21). These rules are "'designed to enhance the accuracy of a . . . sentence by regulating the manner of determining the defendant's culpability.'" *Id.* (alteration in original) (internal quotation marks omitted) (quoting *In re Pers. Restraint of Ali*, 196 Wn.2d 220, 237, 474 P.3d 507 (2020)).

Simply put, *Houston-Sconiers* directs courts to consider the full range of possible sentences—contemplating that defendants will most often be presenting mitigating evidence and advocating for a lesser sentence based on that evidence. *See* 188 Wn.2d at 21-23; *State v. Ramos*, 187 Wn.2d 420, 434, 387 P.3d 650 (2017) (quoting RCW 9.94A.535 ("The person being sentenced pursuant to the SRA carries the burden of proving by a preponderance of the evidence 'that there are substantial and compelling reasons justifying an exceptional sentence' below the standard range.")); *cf. State v. Delbosque*, 195 Wn.2d 106, 123, 456 P.3d 806 (2020) ("[T]he *Miller*-fix statute, . . . unlike the SRA, does not impose a burden of proof on either party."). *Houston-Sconiers* does not require, and we have not otherwise held, sentencing courts to collect mitigating or aggravating evidence sua sponte, without being asked by the defendant or the State to do so.

*Houston-Sconiers* announced a new rule of criminal procedure that applies retroactively to all cases pending on direct review or not yet final. *In re Pers. Restraint of Pierre*, 118 Wn.2d 321, 326, 823 P.2d 492 (1992). Harris's case is on direct appeal, therefore *Houston-Sconiers* applies.

<u>Plea agreements</u>

A plea agreement is a contract. *State v. Sledge*, 133 Wn.2d 828, 838-39, 947 P.2d 1199 (1997). Because plea agreements concern an accused's fundamental rights, due process considerations are also at play. *Id.* at 839. Due process requires the prosecutor to act in good faith and prohibits undercutting the terms or by conduct evidencing an intent to circumvent the terms of a plea agreement. *Id.* at 840, 843. Defendants owe the same duty of good faith. *See In re Pers. Restraint of Breedlove*, 138 Wn.2d 298, 307, 979 P.2d 417 (1999). Whether a plea agreement is breached is an objective inquiry. *State v. Van Buren*, 101 Wn. App. 206, 213, 2 P.3d 991 (2000).

The State is not obligated to enthusiastically make a sentencing recommendation, but it must participate in sentencing proceedings, answer the court's questions with candor, and cannot withhold relevant information regarding the plea agreement. *Sledge*, 133 Wn.2d at 840.

A breach can occur when a party offers unsolicited information through a "report, testimony, or argument" that undercuts the party's obligation under the agreement. *State v. Carreno-Maldonado*, 135 Wn. App. 77, 83, 143 P.3d 343 (2006); *State v. Williams*, 103 Wn. App. 231, 236-39, 11 P.3d 878 (2000) (State breached the plea agreement when it made unsolicited references to aggravating factors and suggested the court go beyond

the recommendation in its sentencing memorandum and at oral argument); *Sledge*, 133 Wn.2d at 840-41 (listing cases in which a prosecutor was held to adhere to or breach a plea agreement). A defendant breaches their plea agreement by refusing to abide by promises in that agreement, such as when a defendant agrees but later declines to testify in another proceeding. *E.g.*, *State v. Thomas*, 79 Wn. App. 32, 35-36, 899 P.2d 1312 (1995).

When a plea agreement is breached, the nonbreaching party has the choice of remedy: specific performance or recession. *Id.* at 36-37 ("Just as a defendant has the option to specifically enforce or rescind a plea agreement after a breach by the State, the State has the option to specifically enforce or rescind a plea agreement after a breach by the defendant." (citations omitted)); *In re Pers. Restraint of James*, 96 Wn.2d 847, 850, 640 P.2d 18 (1982) (specific enforcement is available "provided the defendant has complied with the agreement"); *State v. Hall*, 32 Wn. App. 108, 110, 645 P.2d 1143 (1982) ("The State is expected to keep its bargains *unless* the defendant has failed to keep [theirs]."); *State v. Harrison*, 148 Wn.2d 550, 557, 61 P.3d 1104 (2003) (stating that the nonbreaching party may "withdraw [a] plea and be tried anew on the original charges or receive specific performance of the agreement"). The nonbreaching party's choice of remedy controls unless compelling reasons exist not to allow it. *Id.*

Judges play no role in plea negotiations. RCW 9.94A.421. Courts do, however, play a critically important role when accepting or rejecting a plea agreement: determining whether an agreement is consistent with the interests of justice and with prosecuting standards. RCW 9.94A.431(1); *State v. Tourtellotte*, 88 Wn.2d 579, 583, 564

P.2d 799 (1977) ("The judge's role is not that of a party to the negotiation but rather as an examiner to assure that the plea procedure is characterized by fairness and candor."). While a sentencing judge is not bound by any recommendation contained in an agreement, once the agreement is accepted by the trial court it becomes a binding agreement between the defendant and the State. RCW 9.94A.431(2); *State v. Hunsicker*, 129 Wn.2d 554, 559, 919 P.2d 79 (1996).

<em>Houston-Sconiers</em> and Plea Agreements

Prosecutors and defendants continue to reckon with *Houston-Sconiers* and plea bargaining.[1] Plea bargaining is an "essential" and "highly desirable" part "of the administration of justice." *Santobello v. New York*, 404 U.S. 257, 260-61, 92 S. Ct. 495, 30 L. Ed. 2d 427 (1971); 13 ROYCE A. FERGUSON, JR., WASHINGTON PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 3401, at 2 (3d ed. 2004) ("Plea negotiations are an important, if not essential, part of the criminal justice system."). The negotiation of pleas leads to the majority of final dispositions in criminal cases. *Missouri v. Frye*, 566 U.S. 134, 143, 132 S. Ct. 1399, 182 L. Ed. 2d 379 (2012) (97 percent of federal convictions and 94 percent of state convictions result from guilty pleas); 13 FERGUSON, *supra*, at 2-3 (noting the majority of defendants are convicted by pleading guilty rather

---

[1] An unpublished case from the Court of Appeals reflects one way in which parties are contending with *Houston-Sconiers* and plea negotiations. In *State v. Ortiz*, the State explained that the parties negotiated a plea that allowed the State to argue for a high end and the defense to argue for a low end standard range sentence. No. 81363-3-I, slip op. at 7-8 (Wash. Ct. App. June 15, 2020) (unpublished), https://www.courts.wa.gov/opinions/pdf/813633.pdf. The State informed the court that the both parties had "'specifically'" considered the defendant's youth with the defendant agreeing not to use *Houston-Sconiers* as a basis for recommending an exceptional sentence downward. *Id.* The defense attorney confirmed the agreement. *Id.* at 8.

than through a trial). This process avoids subjecting defendants to excessive time in confinement pretrial, provides them a measure of certainty as to possible punishments, and more quickly begins the rehabilitative process for those pleading guilty and who are imprisoned. *Santobello*, 404 U.S. at 260-61.

Plea bargaining also allows swift closure for victims and preserves time and expense for all involved in the administration of criminal trials. *Frye*, 566 U.S. at 144 (recognizing that plea agreements can benefit both parties based on the "potential to conserve valuable prosecutorial resources and for defendants to admit their crimes and receive more favorable terms at sentencing"). "[O]urs 'is for the most part a system of pleas, not a system of trials.'" *Id.* at 143 (quoting *Lafler v. Cooper*, 566 U.S. 156, 170, 132 S. Ct. 1376, 182 L. Ed. 2d 398 (2012)). Plea bargaining is an integral tool in the criminal justice system and will continue to be widely used.

*Houston-Sconiers* did not consider plea agreements. The juvenile defendants in that case did not enter pleas; they were convicted and sentenced at a contested sentencing hearing. *Houston-Sconiers*, 188 Wn.2d at 12-13.

Indeed, much of our juvenile sentencing case law involves contested sentencings rather than negotiated pleas with agreed sentence recommendations. *E.g.*, *State v. Scott*, 190 Wn.2d 586, 588-89, 416 P.3d 1182 (2018) (holding the *Miller*-fix[2] statute is an adequate remedy when a juvenile received an exceptional sentence after a contested sentencing); Ord., *State v. Vazquez*, No. 97964-2, at 1-2 (Wash. June 5, 2020) (remanding

---

[2] *Miller v. Alabama*, 567 U.S. 460, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012).

case under *Houston-Sconiers* when sentencing court determined a juvenile defendant's youth did not justify an exceptional sentence below the standard range); *Ali*, 196 Wn.2d at 227-29 (holding *Houston-Sconiers* applies retroactively and entitled a juvenile who received a low end standard range sentence after a contested hearing to resentencing); *In re Pers. Restraint of Domingo-Cornelio*, 196 Wn.2d 255, 260-62, 474 P.3d 524 (2020) (same); *In re Pers. Restraint of Hinton*, 1 Wn.3d 317, 322, 329, 525 P.3d 156 (2023) (holding that a juvenile who received a midrange standard sentence with enhancements at a contested hearing had an adequate alternative remedy and only *Houston-Sconiers*'s substantive rule applies retroactively); *see also In re Pers. Restraint of Light-Roth*, 191 Wn.2d 328, 332, 336, 422 P.3d 444 (2018) (holding young adult defendant could argue mitigating evidence of youth under the SRA after receiving the State-requested maximum standard range sentence); *In re Pers. Restraint of Meippen*, 193 Wn.2d 310, 313, 440 P.3d 978 (2019) (dismissing a personal restraint petition for lack of error and prejudice for a juvenile who was sentenced at the top end of the standard range at a contested hearing).[3]

     With these considerations in mind, we turn to the issue before us.

---

[3] We also rejected the argument that trial courts must presume exceptional sentences below the standard range are *required* for juvenile defendants unless the State proves otherwise. *State v. Gregg*, 196 Wn.2d 473, 482-83, 474 P.3d 539 (2020).

1. <u>When a trial court accepts a negotiated plea agreement requiring that neither party advocates for a lesser sentence, *Houston-Sconiers* does not require consideration of youth</u>

Harris argues that *Houston-Sconiers* requires the judge to consider the mitigating qualities of youth and that he must be allowed to present such evidence in spite of his plea bargain and agreed sentencing recommendation.  We disagree.

As the preceding discussion demonstrates, *Houston-Sconiers* and the cases interpreting it have done so almost exclusively in the context of contested sentencing hearings.  The current case presents a different situation—a plea agreement with a joint sentence recommendation accepted by the court without meaningful consideration of the juvenile defendant's youth.[4]  None of our juvenile sentencing cases have addressed this issue.  That is, whether a trial court in the first instance must independently collect mitigating evidence of youth even if it is not raised or argued for by the parties.

This issue of first impression implicates two competing interests:  *Houston-Sconiers*'s requirement that courts meaningfully consider a juvenile defendant's youth and the critical role of plea bargaining in our legal system.  To balance these interests, we hold that when parties negotiate a plea agreement requiring neither party to advocate for a lesser sentence, a trial court is not required to sua sponte ask the parties to provide mitigating evidence of youthful qualities if the court accepts the agreed recommendation.  In such cases, the parties must answer the court's questions with candor.  *See Sledge*, 133

---

[4] The dissent criticizes the majority as a sweeping decision that limits *Houston-Sconiers* in juvenile sentencing writ large.  *See* dissent at 10.  But, the holding of this case applies only in situations where a juvenile defendant has negotiated a plea bargain in which the parties agree not to argue for a lesser sentence and the trial judge accepts the recommendation.

Wn.2d at 840 (parties must candidly answer the court's questions and hold back no relevant information regarding the plea agreement). Nevertheless, parties must also take care not to violate the plea agreement when answering the court's questions. *State v. Talley*, 134 Wn.2d 176, 187, 949 P.2d 358 (1998) (the State must not "contradict its recommendation for a standard range sentence"); *In re Pers. Restraint of Palodichuk*, 22 Wn. App. 107, 111, 589 P.2d 269 (1978) (prosecutor undercut an agreement by expressing reservations about the agreed disposition to the court); *State v. Coppin*, 57 Wn. App. 866, 875, 791 P.2d 228 (1990) (prosecutor did not breach the agreement when explaining why he did not seek an exceptional sentence in response to a direct inquiry by the court).

Conversely, if the parties have not reached an agreed recommendation or if a court does *not* accept a plea and agreed recommendation, a trial court must meaningfully consider mitigating evidence related to the qualities of youth as required by *Houston-Sconiers*. The court must call on the defendant and the State to answer its questions about mitigating or aggravating factors, if relevant, to determine whether mitigation controls the court's sentencing decision. *See Houston-Sconiers*, 188 Wn.2d at 21.

Holding otherwise risks destabilizing the plea-bargaining process in Washington. Such a holding would undo long-settled plea agreements for juveniles who negotiated and received recommended sentences. It would also increase the work of trial judges, requiring them to independently elicit evidence from defendants, who may not as a matter of strategy wish to (or cannot effectively) argue mitigating qualities of youth.

13

Plea bargaining is not perfect,[5] but it "is an essential component" in the administration of the criminal legal system. *Santobello*, 404 U.S. at 260. To protect and encourage this essential work, we conclude that when a trial court accepts a plea bargain and sentence recommendation, *Houston-Sconiers* does not require inquiry into youth. Such an inquiry is required when parties do not come to an agreement, the trial judge rejects it, or the judge intends to impose a different penalty.

Accordingly, we hold that no error occurred when the trial court did not inquire into Harris's youth before accepting the plea agreement and imposing the recommended sentence.

### 2. *Houston-Sconiers* does not relieve the parties of the joint sentence recommendation

Alternatively, Harris contends that if he cannot present mitigation evidence and advocate for a lesser sentence, this should relieve the parties of the joint sentence recommendation. We disagree.

Harris bases this claim primarily on a quartet of California cases, which concludes that plea agreements incorporate subsequent changes in the law. Resp't's Suppl. Br. at 17-18 (citing *John Doe v. Harris*, 57 Cal. 4th 64, 66, 71, 73, 302 P.3d 598, 158 Cal. Rptr. 3d 290 (2013); *People v. Carter*, 97 Cal. App. 5th 960, 974, 315 Cal. Rptr. 3d 895 (2023); *People v. Harrell*, 95 Cal. App. 5th 161, 169, 313 Cal. Rptr. 3d 234 (2023));

---

[5] *E.g.*, Douglas D. Guidorizzi, *Should We Really "Ban" Plea Bargaining?: The Core Concerns of Plea Barganing Critics*, 47 EMORY L.J. 753, 767-73 (1998) (noting criticisms of plea bargaining as undermining the integrity of the criminal legal system and the disproportionate bargaining position of the defense and the prosecution).

Answer & Cross-Pet. for Rev., at 4 (citing *Harris v. Superior Ct.*, 1 Cal. 5th 984, 991, 383 P.3d 648, 209 Cal. Rptr. 3d 584 (2016)).

In *Doe*, the California Supreme Court held that as a general rule in the state, plea agreements are deemed to incorporate and contemplate existing law and the power of the state to amend or enact additional laws. 57 Cal. 4th at 70 ("[T]he Legislature, for the public good and in furtherance of public policy, . . . has the authority to modify or invalidate the terms of an agreement."). That parties entered a plea agreement, lawful at the time of negotiation and accepted by the court, "'does not have the effect of insulating them from changes in the law *that the Legislature has intended to apply to them.*'" *People v. Prudholme*, 14 Cal. 5th 961, 975, 531 P.3d 341, 309 Cal. Rptr. 3d 814 (2023) (quoting *Doe*, 57 Cal. 4th at 66). "[R]equiring the parties' compliance with changes in the law *made retroactive to them* does not violate the terms of the plea agreement." *Doe*, 57 Cal. 4th at 73 (emphasis added).

California courts applying *Doe* closely examine the legislative intent of a subsequent law to determine whether it was intended to apply to previous plea agreements, as well as whether the law spoke to remedies. *E.g.*, *Harris*, 1 Cal. 5th at 989 (noting the later statute expressly referenced "serving a sentence for a conviction, whether by trial *or plea*" (emphasis added)); *Prudholme*, 14 Cal. 5th at 975, 978 (unlike *Harris*, unambiguous statutory language did not exist and the court considered legislative history to determine intent and remedy); *Harrell*, 95 Cal. App. 5th at 164-69 (reviewing the text and legislative history of amendments relating to whether persons serving stipulated sentences were eligible for a certain type of relief); *Carter*, 97 Cal. App. 5th at

15

972-73 (holding the legislature intended to prohibit a prosecutor from withdrawing from a plea for any reduction in sentence); *People v. Coddington*, 96 Cal. App. 5th 562, 565, 314 Cal. Rptr. 3d 610 (2023) (holding the legislature intended to preclude a prosecutor from withdrawing from a plea when a certain offense is struck but allowing withdrawal if the sentence is otherwise reduced), *rev. denied*, No. S282336 (Cal. Jan. 31, 2024).

In his statement of additional authorities, Harris provides only one Washington case in support—*State v. McRae*, 96 Wn. App. 298, 304-05, 979 P.2d 911 (1999).[6] *McRae* considered a due process challenge to an offender score—the defendants argued their juvenile adjudications must be excluded from their adult offender scores based on their plea bargains. *Id.* at 303. The Court of Appeals disagreed that the defendants had a substantive right stemming from earlier sentencing laws in their plea agreements that the prosecutor violated. *Id.* at 305. Instead, the court concluded the statements alleged to give rise to specific performance to exclude certain offenses were not promises from the State to disregard future changes in the law or assurances that the law would not change.

---

[6] Amicus curiae Human Rights for Kids provides an additional, unpublished case: *State v. Morales*, No. 51279-3-II, slip op. at 2, 5-6 (unpublished) (Wash. Ct. App. Dec. 1, 2020), https://www.courts.wa.gov/opinions/pdf/D2%2051279-3-II%20Unpublished%20Opinion.pdf. Br. of Amicus Curiae Human Rts. for Kids in Supp. of Resp't (Am. Br.) at 11-13. There, a juvenile defendant pleaded guilty, *Houston-Sconiers* had already been decided, and the parties informed the court that it must consider the defendant's youth. The sentencing court acknowledged *Houston-Sconiers*'s application. *Morales*, No. 51279-3-II, slip op. at 2, 4. The Court of Appeals affirmed the conviction but remanded on other grounds. *Id.* at 3. This court remanded to the Court of Appeals to reconsider its decision under *Delbosque*, and held the sentencing court's consideration of youth was not meaningful. *Id.* at 3-4. *Morales* is unhelpful because, unlike the current case, *Houston-Sconiers* had already been decided when the defendant was sentenced and both the prosecution and defense asked that the court consider it.

*Id.* at 304-05. Absent a specific promise to exclude their offenses, the defendants could not establish the use of those offenses breached their prior agreements. *Id.* at 305.

It does not appear that *McRae* and the cited California cases apply outside the legislative context. *McRae* involved later amendments to sentencing laws. *Id.* at 300. *Doe*, and the cases in its line, "incorporated only laws amended or enacted by a legislative body. It did not consider the impact of post-plea changes in *decisional law*." Laura Arnold, *The "Romeo & Juliet" Scenario in the Aftermath of* Johnson v. Superior Court, 45 SW. L. REV. 959, 983 (2016) (emphasis added) (footnote omitted).

*McRae* and the California cases are inapposite. Nevertheless, even if we adopt those cases and assume that plea agreements in Washington are not insulated from changes in the law, *Houston-Sconiers* did not involve a statutory change. Moreover, the intent of the legal change at issue (*Houston-Sconiers*) did not contemplate previously made plea agreements. *See Prudholme*, 14 Cal. 5th at 975.

*Houston-Sconiers* was intended to prevent disproportionate sentencing for juvenile offenders subject to adult standard SRA sentences. 188 Wn.2d at 21. This is accomplished by ensuring that judges have wide discretion when sentencing juveniles and that they exercise that discretion in a meaningful way. But the decision does not speak to modifying plea agreements, especially a plea that contains an express promise not to seek a lesser sentence. *Houston-Sconiers* requirements also anticipate that defendants will most often present mitigating evidence supporting a lesser sentence. *See Ramos*, 187 Wn.2d at 434. Neither *Houston-Sconiers* nor any other decision has required

the sua sponte collection of mitigating evidence from sentencing courts, particularly in the context of an agreed sentencing recommendation.

Considering *Houston-Sconiers*'s facts and reasoning, as well as the lack of precedent *requiring* courts to independently collect mitigation evidence, *Houston-Sconiers* did not intend its requirement that courts must consider mitigation evidence should be applied to plea agreements where defendants received the sentences for which they bargained.[7] Harris provides no reason to relieve the parties of their joint sentence recommendation.

3. The remedy for a *Houston-Sconiers* violation is resentencing

The Court of Appeals found a *Houston-Sconiers* violation but, in light of the parties' plea bargain, held that the remedy in this context is for Harris to withdraw his

---

[7] Amicus curiae Human Rights for Kids cites multiple out-of-state cases in support of its argument that mitigating circumstances are constitutionally required notwithstanding a plea agreement. Am. Br. at 8-11, 15-16 (citing *Aiken v. Byars*, 410 S.C. 534, 765 S.E.2d 572 (2014); *State v. Wise*, noted at 882 N.W.2d 874, 2016 WL 894377, 2016 Iowa App. LEXIS 211; *State v. Davis*, noted at 880 N.W.2d 518, 2016 WL 146528, 2016 Iowa App. LEXIS 18; *Casiano v. Comm'r of Corr.*, 317 Conn. 52, 115 A.3d 1031 (2015); *State v. Null*, 836 N.W.2d 41, 45, 76 (Iowa 2013); *Bear Cloud v. State*, 2014 WY 113, 334 P.3d 132, 135 (2014); *Thomas v. Pennsylvania*, 2012 WL 6678686, at *1 & n.2 (E.D. Pa. 2012)). These cases resulted in summary resentencing despite previous plea agreements. The decisions do not discuss the interaction of prior agreements with the requirement to consider youth, nor do they reference the specific terms of any plea agreement. *Aiken*, 410 S.C. at 537, 548-51 (Toal, C.J., dissenting); *Casiano*, 317 Conn. at 55 (same); *Null*, 836 N.W.2d at 45 (same); *Thomas*, 2012 WL 6678686, at *1 & n.2 (same); *Bear Cloud v. State*, 2012 WY 16, ¶¶ 9-15, 275 P.3d 377, 384 (noting defendant entered "cold pleas," without a plea agreement with the State), *vacated by* 568 U.S. 802, 133 S. Ct. 183, 184 L. Ed. 2d 5 (2012). The unpublished Iowa cases are similarly unspecific. In *Wise*, a defendant pleaded guilty and later successfully sought resentencing to consider his youthfulness. 2016 WL 894377, at *1, 2016 Iowa App. LEXIS 211, at **1-2. *Wise* considered only the defendant's argument that the resentencing court relied on an improper factor when it reimposed the original sentence. 2016 WL 894377, at *4; 2016 Iowa App. LEXIS 211, at *10; *Davis*, 2016 WL 146528, at *1, 2016 Iowa App. LEXIS 18, at **1-2 (same).

plea. *Harris*, 27 Wn. App. 2d at 540. The State contends Harris is not entitled to withdraw his plea because the plea is not invalidated due to subsequent changes in the law. Though Harris has not moved to withdraw his plea, we take this opportunity to clarify that resentencing is the proper remedy for a *Houston-Sconiers* violation.

A motion to withdraw a plea made after entry of judgment is reviewed as a collateral attack, even if raised via direct appeal. *State v. Buckman*, 190 Wn.2d 51, 60, 409 P.3d 193 (2018); *State v. Lamb*, 175 Wn.2d 121, 124-26, 285 P.3d 27 (2012). We permit defendants to withdraw pleas when it appears withdrawal is necessary to correct a manifest injustice, that is, if a plea was not knowing, voluntary, and intelligent. *State v. Robinson*, 172 Wn.2d 783, 794, 263 P.3d 1233 (2011); *State v. A.N.J.*, 168 Wn.2d 91, 119, 225 P.3d 956 (2010).

A voluntary plea made pursuant to then applicable law does not become vulnerable because of subsequent judicial decisions. Pet. for Rev. at 8-11; *Brady v. United States*, 397 U.S. 742, 757, 90 S. Ct. 1463, 25 L. Ed. 2d 747 (1970) ("[A] voluntary plea of guilty intelligently made in the light of the then applicable law does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise."). *Lamb* explained that a defendant must be "informed of the direct consequences of the plea that existed *at the time* of the plea." 175 Wn.2d at 129. Applied to Harris, a postplea change in the law would not render his plea invalid because he was properly informed of the consequences in force at the time he was sentenced. *See id.*

Moreover, as a general matter, a defendant on direct appeal need show only the existence of a *Houston-Sconiers* error to receive a resentencing. *In re Pers. Restraint of Carrasco*, 1 Wn.3d 224, 230, 525 P.3d 196 (2023).

While no *Houston-Sconiers* error occurred here, the proper remedy if it had would be resentencing. *See id*. We reverse the Court of Appeals' holding on this issue.[8]

CONCLUSION

To balance the competing interests of parties who have reached an agreed sentencing recommendation with *Houston-Sconiers* protections for juvenile defendants, we hold that when a sentencing court intends to follow a plea agreement and sentencing recommendation, there is no requirement that the court solicit mitigating and/or aggravating factors from the parties. On the other hand, if the sentencing court does not follow the proffered agreement and intends to impose a different sentence, *Houston-Sconiers* requires meaningful consideration of a defendant's youth. In that case, a party does not violate its agreement by strictly answering the sentencing court's questions and does not advocate for a lesser sentence. Similarly, the State does not breach its agreement if it responds to a trial court's questions regarding aggravating evidence.

Accordingly, we affirm the Court of Appeals on different grounds and reverse in part. We affirm *Houston-Sconiers*'s application to Harris because this case is on direct

---

[8] Because no *Houston-Sconiers* error occurred and resentencing is not required, we decline to address the remaining issues presented. *Hayden v. Mut. of Enumclaw Ins. Co.*, 141 Wn.2d 55, 68, 1 P.3d 1167 (2000) ("'[I]f resolution of an issue effectively disposes of a case, we should resolve the case on that basis without reaching any other issues that might be presented.'" (internal quotation marks omitted) (quoting *State v. Peterson*, 133 Wn.2d 885, 894, 948 P.2d 381 (1997) (Talmadge, J., concurring))); *see* Answer & Cross-Pet. for Rev. at 3.

appeal.  That the original trial court did not consider Harris's youth was not error, however.  We reverse the Court of Appeals' holding that *Houston-Sconiers* was violated and that the remedy for such a violation is withdrawal of a plea.

Because we conclude no error occurred and affirm Harris's sentence, we decline to address the remaining issues regarding notice and breach of a plea agreement on resentencing.

_____
Madsen, J.

WE CONCUR:

_____
González, C.J.

_____
Johnson, J.

_____
Yu, J.

_____
Owens, J.

_____

_____
Stephens, J.

_____
Whitener, J.

No. 102311-1

YU, J. (concurring) — I fully agree with the majority's holding that "juvenile defendants on direct review receive the benefit of *Houston-Sconiers*," and that it does not impose a requirement on "sentencing courts to collect mitigating or aggravating evidence sua sponte" when the parties have reached a plea agreement with a joint sentencing recommendation. Majority at 1, 6; *see State v. Houston-Sconiers*, 188 Wn.2d 1, 391 P.3d 409 (2017). In my view, imposing such a requirement changes the role of the judge and undermines defense counsel.

While I join the majority, I nevertheless write to acknowledge my support for the dissent's vision of juvenile justice reform and the disappointment in the lost opportunities of prior decisions. However, I do not join the dissent because the majority correctly strikes the balance between application of our current case law, the need to protect juvenile privacy, and respect for the role of defense counsel in our adversarial criminal legal system.

1

Given the adversarial nature of our criminal legal system, a trial judge must recognize the limits of their role as a neutral decision-maker. This neutrality ensures that judicial officers act "fairly and impartially" in performing their duties to "uphold and apply the law." CJC 2.2. The judge's duty of impartiality is especially crucial when a trial judge is considering whether to accept a plea agreement with a joint sentencing recommendation.

As a matter of both statutory and constitutional law, trial judges are authorized to consider youthfulness of a juvenile defendant sentenced in adult court, with "full discretion to depart from mandatory sentencing enhancements and to take the particular circumstances surrounding the defendant's youth into account." RCW 9.94A.533(15); *see also Houston-Sconiers*, 188 Wn.2d 1. This affords juvenile defendants an opportunity to provide mitigating information to the trial court *if they so choose.*

Defense counsel may present oral argument or submit a presentence report to outline the defendant's circumstances, such as youthfulness, in support of a sentencing recommendation, joint or otherwise. *See* CrR 7.1(d); RCW 9.94A.500(1). However, these reports are generally not mandatory. RCW 9.94A.500(1). Where the defendant has chosen *not* to provide mitigating information in connection with a joint sentencing recommendation, trial judges must exercise restraint before soliciting mitigation information sua sponte.

Trial judges are not bound to follow the parties' plea agreement because "the court retains the ultimate decision on sentencing." *State v. Harrison*, 148 Wn.2d 550, 557, 61 P.3d 1104 (2003). However, they are not authorized to probe for information that the parties specifically and intentionally wish to keep out of the record. It is critical that trial judges respect the parties' good-faith efforts to reach a joint plea agreement because "[j]udges play no role in plea negotiations." Majority at 8 (citing RCW 9.94A.421). These negotiations can, and often do, consider aspects of a defendant's circumstances, including their age and personal social struggles, and possibly their prior bad acts. There are so many issues regarding one's prior adolescent period that an individual may not want revealed in open court. Despite the good intentions of a judge, these young people must be respected and allowed to retain their agency and control of information they might consider private.

A judge cannot and should not assume anything regarding what information was discussed in plea negotiations. The only inquiry that ought to be vigorously pursued is whether the person understands the nature of the charges, the consequences, and whether the plea is voluntary. Dangerous assumptions cannot be avoided if trial judges were *required* to seek out mitigating information regarding youthfulness before accepting a joint sentencing recommendation in every case involving a juvenile defendant. I agree with the majority that such a

3

requirement "risks destabilizing the plea-bargaining process in Washington."

Majority at 13.

A rule requiring trial judges to solicit mitigating information about a defendant's youth could have a negative impact by undermining the defense attorney's role and placing the trial judge in the position of a defense advocate. Conversely, because the trial judge cannot know what occurred during plea negotiations, a probe into the defendant's life in search of circumstances that relate to youthfulness may inadvertently unearth *aggravating* points that could be used to increase, rather than decrease, the defendant's sentence. In either scenario, the trial judge risks stepping outside their role as neutral adjudicator by substituting their assumptions for counsel's professional judgment.

Requiring trial judges to question juvenile defendants about their personal histories in adult court undermines the defendant's interest in privacy, creating "very real and objectively observable negative consequences." *State v. S.J.C.*, 183 Wn.2d 408, 432, 352 P.3d 749 (2015). In contrast to juvenile court proceedings, juvenile defendants placed in adult court are not afforded the same benefit of having their court records sealed pursuant to statute. *See id.* at 430, 434. Therefore, these defendants can expect no confidentiality at sentencing. The statements made by, and about, a juvenile defendant in adult court will become part of the public record. This public information could lead to the "denial of

'housing, employment, and education opportunities,'" further exacerbating racial disparities in a system where it is already "well documented that juveniles of color face disproportionately high rates of arrest." *Id.* at 432-33 (quoting LAWS OF 2014, ch. 175, § 1(1)).

In juvenile courts, "'[a]ccess to and the use of juvenile records should be strictly controlled.'" *Id.* at 429 (alteration in original) (quoting INST. OF JUD. ADMIN. & AM. BAR ASS'N, JUVENILE JUSTICE STANDARDS: STANDARDS RELATING TO JUVENILE RECORDS AND INFORMATION SYSTEMS 115-16 (1980)). However, within the context of juveniles tried in adult court, the only barrier that protects a juvenile defendant's privacy is defense counsel. In consultation with their client, defense counsel alone can control whether mitigating information about youthfulness is disclosed to a trial judge and, if so, how it can be done in a way that furthers the defendant's objectives and priorities.

Defense counsel may have strategic and tactical reasons not to disclose certain information about a defendant's life in open court. They are entitled to a presumption of effective advocacy in making this decision, even if the undisclosed information could be viewed as mitigating by a sentencing judge. *See Strickland v. Washington*, 466 U.S. 668, 689, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). By exercising restraint and respecting defense counsel's role, trial judges can ensure

that the defendant's privacy is safeguarded and that the defendant is not compelled to provide statements at sentencing that could be used against them.

The dissent's vision for juvenile justice reform is one in which I wholeheartedly share. However, it is imperative that trial judges remain neutral and impartial to best serve the interests of justice throughout the criminal legal system, including juvenile justice reform efforts. Trial judges cannot maintain their neutral role if they are required to solicit mitigating evidence sua sponte before accepting a juvenile defendant's plea and joint sentencing recommendation. Further, courts must take care to limit the amount of private information a juvenile defendant is compelled to provide in open court, respecting defense counsel's duty and ability to obtain the best possible outcome for their client.

For these reasons, I respectfully join the majority.

Yu, J.

Whitener, J.

No. 102311-1

MONTOYA-LEWIS, J. (dissenting)—Today, the majority's opinion undercuts this court's prior precedent by holding that accepting a plea agreement prohibits a juvenile from resentencing that we have previously held is a constitutional mandate. This court continues down a troubling path that appears to limit our juvenile jurisprudence to such an extent that what we have previously accepted as being of constitutional magnitude has become an error without a true remedy. While the majority correctly acknowledges that (1) the dual mandates of *Houston-Sconiers*[1] apply to 17-year-old Darren Harris's sentence, (2) the sentencing court did not follow those requirements, and (3) the proper remedy for a *Houston-Sconiers* error is resentencing, it declines to recognize that error or grant any relief because, like many people accused of committing crimes, Harris accepted a plea agreement. That reasoning impermissibly undermines the constitutional protections against disproportionate punishments *for children* while simultaneously divesting

---

[1] *State v. Houston-Sconiers*, 188 Wn.2d 1, 391 P.3d 409 (2017).

1

sentencing courts of their responsibility to exercise discretion as required by statute and constitution. Therefore, I respectfully must dissent.

As this court has repeatedly recognized, "'[c]hildren are different.'" *State v. Houston-Sconiers*, 188 Wn.2d at 8 (quoting *Miller v. Alabama*, 567 U.S. 460, 480, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012)). Children possess diminished culpability compared to adults, which renders certain punishments unconstitutionally disproportionate for youth. *Id.* at 19 n.4 (citing *Roper v. Simmons*, 543 U.S. 551, 569-71, 125 S. Ct. 1183, 161 L. Ed. 2d 1 (2005); *Graham v. Florida*, 560 U.S. 48, 74, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010); *Miller*, 567 U.S. at 483). In *Houston-Sconiers*, we held that when punishing children convicted as adults, the Eighth Amendment to the United States Constitution requires courts to consider the mitigating qualities of youth and to have discretion to set lower sentences in order to impose a proportional punishment based on those qualities. *Id.* at 19-21. Specifically, the court must consider children's lessened culpability, poorer judgment, and greater capacity for change compared to adults. *Id.* at 19 n.4 Further, it must do so with knowledge that it has discretion to impose *any* lesser sentence below the otherwise applicable sentence under the Sentencing Reform Act of 1981 (SRA), ch. 9.94A RCW, if it finds that sentence would be disproportionate in light of the defendant's youthful characteristics. *Id.* at 19-21.

We left no room for doubt in *Houston-Sconiers* that these requirements are *mandatory* every time a child is convicted and sentenced as an adult: "we hold that sentencing courts *must have complete discretion* to consider mitigating circumstances associated with the youth of any juvenile defendant, even in the adult criminal justice system." *Id.* (emphasis added). "Trial courts *must consider* mitigating qualities of youth at sentencing and *must have discretion* to impose any sentence below the otherwise applicable SRA range and/or sentence enhancements." *Id.* (emphasis added); *see also In re Pers. Restraint of Ali*, 196 Wn.2d 220, 232, 474 P.3d 507 (2020) ("the Eighth Amendment requires that the sentencing judge consider the defendant's youthfulness *and* retain absolute discretion to impose a lower sentence"). If a court fails to do so, it also fails to ensure proportionate punishment. *Ali*, 196 Wn.2d at 240. It is difficult to see how the *Houston-Sconiers* court could have made this imperative any clearer. 188 Wn.2d at 9-34 (using the mandatory language that sentencing courts "must" follow these dual requirements no fewer than 10 times). On direct appeal, such as here, "the defendant needs only to establish the existence of the *Houston-Sconiers* error in order to be entitled to a new sentencing hearing." *In re Pers. Restraint of Carrasco*, 1 Wn.3d 224, 230, 525 P.3d 196 (2023).

In this case, no one disputes that *Houston-Sconiers* applies to Harris or that his sentencing hearing failed to comport with the constitutional requirement that the

sentencing court consider the mitigating qualities of youth with the understanding that it has discretion to impose a lower sentence outside the SRA range in light of those mitigating circumstances. To the contrary, the sentencing court indicated its mistaken belief that it did not have authority to impose a sentence that included the weapon enhancement concurrently rather than consecutively. Tr. of Proc. (Aug. 17, 2012) at 38-39 ("Well, if this sentence was going to be two hundred and twenty months, including the twenty-four months, I wouldn't have followed it, because certainly it needs to be two hundred and forty-four, not two hundred and twenty."). Though the SRA makes weapon enhancements mandatory and consecutive when sentencing adults, *Houston-Sconiers* recognized that as applied to juveniles, "[t]he mandatory nature of these enhancements violates the Eighth Amendment protections" and so courts must have discretion to make such enhancements concurrent or not impose them at all. 188 Wn.2d at 25-26, 21. The court did not know it had discretion to impose a lesser sentence regarding the weapon enhancement and it did not consider any mitigating circumstances of youth with respect to Harris. On its face, this record demonstrates a *Houston-Sconiers* error at sentencing, and Harris should be entitled to resentencing. *Carrasco*, 1 Wn.3d at 230.

The State and the majority focus on the plea agreement as binding Harris and the State, preventing Harris from presenting mitigating evidence at the sentencing hearing—though all agree the parties would have to answer candidly any questions

4

the court might ask about the mitigating qualities of youth. *State v. Sledge*, 133 Wn.2d 828, 840, 947 P.2d 1199 (1997). The defendant and the State cannot be the only actors in the sentencing process. While the court is not a party to the plea agreement, it is not a passive bystander here or, crucially, at *any sentencing*.

Sentencing judges are "not bound by any recommendations contained in an allowed plea agreement." RCW 9.94A.431(2). The judge's task is to "determine if the agreement is consistent with the interests of justice and with the prosecuting standards." RCW 9.94A.431(1). Thus, it is the sentencing court's responsibility to assess the recommended sentence and determine for itself whether to follow the recommendation—or not. The court has not only the authority but also the duty to impose the sentence it deems consistent with the interests of justice and prosecuting standards, even if it differs from what the parties agree to recommend. RCW 9.94A.431. And in the context of juvenile sentencing, the court need not even impose a sentence within the standard range under the SRA; it has "discretion to impose *any sentence below the otherwise applicable*" sentence and it "*must consider mitigating qualities of youth at sentencing*." *Houston-Sconiers*, 188 Wn.2d at 21 (emphasis added). Rather than follow these time-honored principles, which we have held are both statutory and constitutional mandates, the majority diverges from this and holds that contract principles hold more importance.

5

Instead of ensuring a sentencing court has the authority to analyze whether a sentence (especially of a juvenile) follows the requirements of constitutional and legislative mandate, the majority today holds that when the parties agree to a recommended sentence, "a trial court is not required to sua sponte ask the parties to provide mitigating evidence of youthful qualities if the court accepts the agreed recommendation." Majority at 12. I cannot join a position that is entirely inconsistent with the role of the sentencing court under our statutes and our case law. It cannot be that when the parties agree to a recommended sentence, the court has no duty to ensure that the sentence it ultimately imposes is a constitutional one. Further, it absolutely cannot be so when one of the parties is a juvenile.

The majority's holding that a person such as Harris can never have a proper, constitutional sentencing hearing forces us to confront the truth: that this error of constitutional proportions has no remedy. *Houston-Sconiers* was decided during a period where this court acted as a front-runner in recognizing the robust constitutional protections for children accused of committing crimes. *E.g.*, *State v. Bassett*, 192 Wn.2d 67, 72-73, 85-90, 428 P.3d 343 (2018) (life without parole (LWOP) sentences for children are categorically unconstitutional under the Washington Constitution); *In re Pers. Restraint of Monschke*, 197 Wn.2d 305, 311-13, 482 P.3d 276 (2021) (plurality opinion) (mandatory LWOP sentences for young adults at least up to age 20 are unconstitutional under the Washington Constitution).

In more recent years, this court has increasingly moved away from these holdings, which we held were grounded in constitutional requirements, to undermine those same protections in ways that have created inconsistencies and unjust results. Ultimately, this path we are on erodes the legitimacy of our juvenile justice jurisprudence. We seem to have no hesitation in chipping away at our prior precedents, for reasons that I cannot join and do not understand.[2]

For example, we have recognized that not only did *Houston-Sconiers* announce a new rule applicable to all cases that are not yet final—it also applies retroactively to cases on collateral review as a substantive constitutional rule that prohibits adult sentences that would be disproportionate punishment for juveniles with diminished culpability. *Ali*, 196 Wn.2d at 237. In doing so, we explicitly held that "[t]he substantive protection of proportionate punishment ceases to exist without the mechanism to determine whether the juvenile belongs in the class of culpability

---

[2] We have been loath to overrule precedent in other contexts. *See, e.g.*, *City of Sammamish v. Titcomb*, No. 101894-1, slip op. at 8-9 (Wash. Sept. 12, 2024), https://www.courts.wa.gov/opinions/pdf/1018941.pdf (declining to overrule Court of Appeals decision finding fish passage not to be a legitimate condemnation purpose where we could conclude that fish passage purpose does not divest city of condemnation authority for other legitimate purpose in RCW 8.12.030); *State v. Ortiz Martinez*, 196 Wn.2d 605, 612-14, 476 P.3d 189 (2020) (declining to overrule precedent on complaint doctrine as inconsistent with hearsay rules where doctrine was long standing, protected victims, and provided important supplement to rules of evidence); *State v. Frawley*, 181 Wn.2d 452, 464-65, 334 P.3d 1022 (2014) (declining to overrule precedent that public trial rights violations may be asserted for first time on appeal to avoid perception of trial proceedings being presumptively closed, with open proceedings serving as exception). We should uphold consistent standards in the juvenile justice context to preserve the legitimacy of that jurisprudence, should we wish to be consistent in our approach to precedent.

that would allow adult sentences . . . . This does not transform *Houston-Sconiers*'s substantive rule into a procedural rule." *Id.* at 240; *see also In re Pers. Restraint of Domingo-Cornelio*, 196 Wn.2d 255, 266, 474 P.3d 524 (2020) ("*Houston-Sconiers* announced a substantive constitutional rule" because it "identified a category of punishments that are beyond courts' authority to impose"). But just three years after we recognized *Houston-Sconiers* as a substantive and retroactive rule in *Ali* and *Domingo-Cornelio*, this court eviscerated that holding in *In re Personal Restraint of Hinton*, severing *Houston-Sconiers*'s "procedural requirements" from its "substantive rule," despite *Ali*'s express and repeated holding to the contrary. 1 Wn.3d 317, 329-31, 525 P.3d 156 (2023). *Contra Ali*, 196 Wn.2d at 239 (*Houston-Sconiers* did not announce a procedural rule), 240 (same), 241 (same). *See also Hinton*, 1 Wn.3d at 337-38 (Whitener, J., dissenting) ("We framed both *Ali* and *Domingo-Cornelio* as analyzing whether the dual mandates of *Houston-Sconiers* are retroactive."); *Carrasco*, 1 Wn.3d at 243-46 (Whitener, J., dissenting) (same). As a result, the court limited the relief available to children who undeniably received sentences without the protections of *Houston-Sconiers*, contrary to the unequivocal decision in *Houston-Sconiers* itself. Similarly, in apparent disregard for our recent juvenile justice holdings, this court held in *State v. Haag* that "any" de facto life sentences are categorically unconstitutional for children and that *Miller*-fix sentencing hearings require courts to consider the mitigating qualities of youth, 198

8

Wn.2d 309, 317, 330, 495 P.3d 241 (2021), yet this court reversed course the next year, holding in *State v. Anderson* that a de facto life sentence for a child was permissible when there was some evidence they understood consequences, despite other evidence of immaturity and impulse, 200 Wn.2d 266, 287-88, 516 P.3d 1213 (2022); *see also id.* at 303-04 (González, C.J., dissenting) (critiquing the majority for "rewrit[ing] our jurisprudence" and expressing concern that the resentencing court gave considerable weight to the original sentencing transcript, given its backward-looking approach and the backdrop of since-debunked racist "superpredator" myth); *id.* at 310 (Yu, J., concurring in dissent) ("In fact, by disregarding both our precedent and the stare decisis considerations supporting it, the majority causes confusion and invites further litigation attempting to undermine settled law."). These cases may address different issues than the one before us today but show a troubling and consistent backtracking on what we have held our constitution requires.

Once again, "the majority . . . is either mistaken or dishonest" in its view that no *Houston-Sconiers* error occurred here, where the record shows the sentencing did not comport with the mandatory requirements of *Houston-Sconiers*, and that Harris is not entitled to any remedy. *Id.* at 309 (Yu, J., concurring in dissent). The majority holds that in light of a plea and agreed recommended sentence, the defendant cannot raise and the court need not consider the mitigating qualities of youth that we

9

*required* sentencing courts to consider in *Houston-Sconiers*. The result is that there is no remedy for this constitutional violation. I cannot join such a holding.

To be sure, to so limit the efficacy of *Houston-Sconiers* in the context of plea agreements will have vast consequences. As the majority acknowledges, the overwhelming majority of criminal convictions result from guilty pleas. Majority at 9. That means that in reality, astonishingly few children charged as adults will actually receive sentencing that comports with *Houston-Sconiers* if, as the majority's result compels, those Eighth Amendment protections vanish once the child agrees to plead guilty. This highlights another issue with the majority's holding today. As any trial judge knows, plea agreements are offered with recommendations for sentences that are lesser than the sentences people would face if they took their case to trial and were convicted. The majority seems to believe that a juvenile can assess those risks with the maturity an adult might, even though we have stated countless times, "'[c]hildren are different.'" *Houston-Sconiers*, 188 Wn.2d at 8 (quoting *Miller*, 567 U.S. at 480). Indeed, we have discussed why juveniles are different at length in prior cases, and we have held symposia that have educated not only this court but also the public on the neuroscience that explains why these holdings are based in widely accepted scientific principles.[3] I do not dispute that counsel has a

---

[3] *See, e.g.*, Wash. State Sup. Ct. Symposium, *A Legacy of Harm: Examining the Impacts of Our Sentencing Paradigm* (2024), *video recording by* TVW, Washington State's Public Affairs Network, https://tvw.org/video/washington-supreme-court-minority-and-justice-commission-

10

critical role in advising their juvenile clients about the benefits of accepting a plea and I do not suggest here that no juvenile can do so freely and voluntarily. What I do dispute is that they can do so with the wisdom and maturity of an adult. If what we have held in so many of our cases on juvenile justice remains true (and as far as I can see, nothing has changed other than our view), then it follows that a juvenile's decision making about accepting a plea should be subject to the discretion of the sentencing judge.

Accordingly, I respectfully dissent.

Montoya-Lewis, J.

Gordon McCloud, J.

---

symposium-2024061073/?eventID=2024061073; Wash. State Sup. Ct. Symposium, *"Behind Bars:" The Increased Incarceration of Women and Girls of Color* (2021), *video recording by* TVW, Washington State's Public Affairs Network, https://tvw.org/video/2021-state-supreme-court-symposium-2021061001/?eventID=2021061001; Wash. State Sup. Ct. Symposium, *Looking to the Future: Adolescent Brain Development and the Juvenile Justice System* (2014), *video recording by* TVW, Washington State's Public Affairs Network, https://tvw.org/video/washington-state-supreme-court-symposium-2014051062/?eventID=2014051062.

11